UNITED STATES of America

v.

Marcus SINGER.

Crim. No. 1150–54.

United States District Court
District of Columbia.

March 16, 1956.

Leo Rover, U. S. Atty., William Hitz, Asst. U. S. Atty., Washington, D. C., for the government.

Daniel Pollitt, Sidney Sachs, Washington, D. C., for defendant.

MATTHEWS, District Judge.

The defendant, Marcus Singer, is before this Court charged in a multiple count indictment under Title 2 of Sec-

tion 192 of the United States Code Annotated with unlawfully refusing to answer certain pertinent questions when he appeared as a witness before a subcommittee [1] of the Committee on Un-American Activities of the House of Representatives on May 26 and 27, 1953, in the District of Columbia. Having waived a jury, the defendant was tried by the Court. At the close of the evidence offered by the government, the defendant moved for a judgment of acquittal, and his motion was granted as to counts 2 and 12 through 22. At the close of all the evidence the defendant moved for a judgment of acquittal as to the remaining counts which are 1, 3, 4, 5, 6, 7, 8, 9, 10 and 11.

When the defendant appeared as a witness he told the Committee that he was not then a member of the Communist Party but had met with a Communist group when he was at Harvard University, first in late 1940 or early 1941 and through the war years until perhaps 1944 or 1945. At that time he considered himself a Communist, and supported the Communist program. He stated that the group was autonomous and that its members did not follow any "slavist" policies. He discussed the size of the group, referred to its members as professionals associated with universities and among other things described group activities. He stated also that in immediate proximity to the war years, the postwar years and the subsequent years of 1946, 1947 and 1948, his interest dwindled to the point where he disassociated himself completely from the group, and that his basic loyalties always were and would be with his country.

The defendant gave considerable information but declined to tell the Committee who invited him to become a member of the Communist group, whether he knew "as a member of the Communist Party" certain individuals with whom he had admitted acquaintanceship,

and whether these individuals attended the meetings which he had mentioned. It was the defendant's position that he would talk freely about himself but that in honor and conscience he could not talk about his colleagues and associates who he alleges did nothing subversive. The defendant further stated that to answer such questions would tend to incriminate him.

Three main issues have been raised: (1) whether the Committee specifically overruled the defendant's objections, or specifically directed him to answer despite his objections; (2) whether the questions he would not answer were pertinent to the inquiry authorized; and (3) whether he waived his privilege against self-incrimination with respect to the questions he refused to answer.

## I

To lay the necessary foundation for a prosecution under Section 192 of Title 2 of the United States Code Annotated a congressional investigating committee before whom a witness appears must specifically overrule the objections of the witness or specifically direct him to answer despite his objections. Bart v. United States, 349 U.S. 219, 75 S.Ct. 712, 99 L.Ed. 1016; Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L. Ed. 964. Whether the Committee in the instant case laid the requisite foundation turns on a colloquy which took place at the hearing.[2] The background leading to the colloquy will now be related.

Mr. Singer was asked the question set out in count 1 of the indictment "Who invited you to become a member of this group (Communist Party group at Harvard)?" He declined to answer stating that in honor and conscience he felt he should not talk about his colleagues and associates. He was then directed to answer by Mr. Velde, the Committee Chairman. After conferring with his attorney, Mr. Singer said that an answer might tend to incriminate him and "for both these reasons of honor and con-

---

1. The subcommittee will be called the Committee.

2. Government's Exhibit No. 9, p. 1552.

science and of incrimination" he would rather not answer. His claim against self-incrimination was not allowed or disallowed nor was he directed to answer despite that claim. The Committee went on to some other question. Later the group of questions set out in counts 2 through 10 of the indictment were put to the defendant as to whether nine individuals were known to him as members of the Communist Party, each of the questions dealing with one of these nine individuals.[3] On the same grounds the defendant declined to answer each of these questions but was not apprised of the Committee's disposition of his objections and at the time no direction to answer was given.

Four questions then followed which were answered by the defendant without objection. Next a question was propounded as to whether nine named individuals attended the (Communist) meetings about which the defendant had testified, the text of that question (set out in count 11) being:

"Now, these people we have mentioned up to this time—Robert G. Davis, Wendell H. Furry, Isador Amdur, Norman Levinson, John H. Reynolds, Dirk Struik, William Ted Martin, Lawrence Arguimbau, and Helen Deane Markham—did they attend these meetings to which you testified yesterday?" (Count 11.)

On the same grounds Mr. Singer declined to answer the question. Nevertheless, the same inquiry was again made but in a different way, nine questions being used and each constituting a part of the single question in count 11. The defendant on the same grounds declined to answer the nine questions. They are set out in counts 12 through 20 of the indictment.[4] Immediately after the defendant had declined to answer the questions included in counts 11 through 20 this colloquy took place:

"Mr. Kunzig. I request, sir, that the witness be directed to answer *that series of questions,* as they are completely pertinent and relevant to the matter before this committee. (Emphasis added.)

"Mr. Velde. Yes. Again I want to say to the witness that, under the obligations imposed upon us by the House of Representatives and the duty we have, it is very necessary that, if we are to carry out these duties, the witnesses we bring before this committee not only answer

---

3. Count 2: "Did you know him (Robert G. Davis) as a Communist?"
   Count 3: "Did you know Wendell H. Furry as a member of the Communist Party?"
   Count 4: "Did you know Isador Amdur as a member of the Communist Party?"
   Count 5: "Did you know Norman Levinson as a member of the Communist Party?"
   Count 6: "Did you know him (John H. Reynolds) to be a member of the Communist Party?"
   Count 7: "Did you know Dirk Struik to be a member of the Communist Party?"
   Count 8: "Did you know him (William Ted Martin) to be a member of the Communist Party?"
   Count 9: "Did you know him (Lawrence Arguimbau) to be a member of the Communist Party?"
   Count 10: "Did you know Helen Deane Markham to be a member of the Communist Party?"

4. Count 12: "Did Wendell H. Furry attend these Communist meetings you testified about yesterday?"
   Count 13: "Did he (Wendell H. Furry) attend any one of the meetings?"
   Count 14: "Did Isador Amdur attend any one of these meetings to which you testified yesterday?"
   Count 15: "Did Norman Levinson attend any one of these Communist meetings to which you testified yesterday?"
   Count 16: "Did John H. Reynolds attend any one of these Communist meetings to which you testified yesterday?"
   Count 17: "Did Dirk Struik attend any one of these Communist meetings to which you testified yesterday?"
   Count 18: "Did William Ted Martin attend any one of these Communist meetings to which you testified yesterday?"
   Count 19: "Did Lawrence Arguimbau attend any one of these Communist meetings to which you testified yesterday?"
   Count 20: "Did Helen Deane Markham attend any one of these Communist meetings to which you testified yesterday?"

as to their own affiliation with the Communist Party or any other subversive group but also tell about the operations of that particular group, tell who were members, and so forth.

"I know you are represented by able counsel, and I hope you will realize there is a possibility that you will be cited for contempt of this committee and contempt of Congress.

"Bearing that in mind, the Chair feels that *these questions* put to you by counsel,[5] which you declined to answer, are pertinent to this committee's work; and, therefore, I direct you to answer *these questions.* (Emphasis added.)

"Mr. Singer. * * * I wish to restate my position: That, in honor and conscience, I just cannot, and also for fear of incrimination—

* * * * * *

"Mr. Clardy. Since you have directed the witness to answer *the questions* it would probably be well, in view of that direction, if counsel would *again* ask him either singly or collectively as to *whether or not those members attended any single meeting.* In other words, I think they should be repeated now that the direction of the Chair has been given so this record may be clear."

Mr. Clardy's suggestion was not followed by the Chairman, the latter declaring that "the record is clear enough with reference to his refusal to answer relative to those people he knew." [6]

It is clear that the Committee made no specific ruling on the objections of the defendant but did give the direction to answer indicated in the colloquy. A query arises as to the scope of that direction. The request of Mr. Kunzig, committee counsel, was that the defendant be directed to answer "that series of questions" without otherwise identifying the questions. Thereupon the Chairman directed the defendant to answer "these questions" after referring to them as "these questions put to you by counsel which you declined to answer." Two views of the scope of the direction are possible. One is that the direction applied to all questions which the defendant up to that time had declined to answer, considering all such questions as *one series.* The other possible view is that there were *two series* of such questions and that the direction applied only to questions in the second series, considering the first series as the questions in counts 2 through 10 (as to whether the defendant knew named individuals as members of the Communist Party) and the second series as the questions in counts 11 through 20 (as to whether these named individuals attended Communist meetings about which the defendant had testified). Mr. Clardy in his quoted statement appears to regard the direction as applying only to the second series, being the series immediately preceding the Chairman's direction to answer.

This being a criminal case the defendant is presumed to be innocent. If from the evidence two theories are equally consistent—one of innocence and one of guilt—the court must adopt that of innocence. As to counts 1, 3, 4, 5, 6, 7, 8, 9 and 10 the proposition that the defendant was directed to answer finds no

5. Mr. Kunzig, committee counsel, up to this time had asked all the questions the defendant had declined to answer except the question in count 13.

6. Government's Exhibit No. 9, p. 1553. Prior to Mr. Singer's appearance in 1953 before the Committee the United States Court of Appeals for this Circuit had ruled that a sufficient basis is laid for a charge of refusal to answer a question if the witness is made aware in some

manner or other that the Committee desires him to answer despite his claim of privilege. In 1955, however, the Supreme Court held that the Committee must either specifically overrule the objection or specifically direct the witness to answer despite his objection. See the Quinn, Emspak and Bart cases, 91 U.S.App.D.C. 344, 378, 370, 203 F.2d 20, 54, 45, reversed 349 U.S. 155, 190, 219, 75 S.Ct. 668, 687, 712.

more support in the evidence than the contrary proposition that he was not directed to answer. Clearly the Chairman's direction to the witness and the surrounding circumstances leave in doubt the appliance of that direction to the questions in the specified counts. It follows that the requisite foundation for prosecution for a deliberate, intentional refusal to answer was not laid as to these counts. Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964; Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997; Bart v. United States, 349 U.S. 219, 75 S.Ct. 712, 99 L.Ed. 1016.

■ The question in count 11 is in a different category. It is the first question in the second or last series of questions [7] which the defendant had declined to answer just before he was directed to answer by the Chairman. From that direction and the setting in which it was given as shown by the evidence, the court concludes that beyond a reasonable doubt the defendant was specifically directed to answer the question in count 11 despite his objections, and that he adhered to his refusal to answer.

## II

With respect to count 11, there remain to be considered the question of pertinency and defendant's plea of self-incrimination.

The statute under which the indictment was returned provides in part:

"Every person who having been summoned as a witness * * * to give testimony * * * upon any matter under inquiry before * * * any committee of either House of Congress * * * refuses to answer any question *pertinent to the question under inquiry,* shall be deemed guilty of a misdemeanor * * *." [8]

(Emphasis added.)

■ When a witness refuses to answer a question and the government undertakes to convict him of a criminal offense for not answering, then pertinency must be established. Sinclair v. United States, 279 U.S. 263, 292, 49 S.Ct. 268, 73 L.Ed. 692. Bowers v. United States, 92 U.S.App.D.C. 79, 202 F.2d 447.

The first step in determining pertinency is to ascertain the subject matter of the inquiry conducted by the Committee. The Committee before whom defendant appeared was authorized to make investigations of "(1) the extent, character and objects of Un-American propaganda activities in the United States, (2) the diffusion within the United States of subversive and Un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed by our Constitution, and (3) all other questions in relation thereto that would aid Congress in any necessary remedial legislation." [9]

The pertinency of the question covered by count 11 depends upon whether the answer to that question would aid the Committee in its investigation of the matters just mentioned.

On its face, the question covered by count 11, which concerns whether certain named individuals attended meetings mentioned by the defendant, does not appear pertinent to the inquiry. The government, however, has shown that this question was pertinent.

The Committee at the time defendant appeared before it was attempting to ascertain the character, extent and objects of Communist Party activities when such activities are carried on by members of the teaching profession who are

---

7. The second series of questions are in counts 11 through 20. Counts 12 through 20 concern questions which are constituent parts of the previous question set out in count 11. The Committee may not multiply a contempt and the punishment therefor by repeating the same inquiry and eliciting the same reply. The defendant therefore has been acquitted on counts 12 through 20.

8. 2 U.S.C.A. § 192.

9. H.Res. 5, Government's Exhibit No. 6, p. 24.

subject to the directives and discipline of the Communist Party.[10]

■ It cannot be disputed that the Communist movement is a threat to the form of government guaranteed by our Constitution.[11] It is well known that schools and colleges are a target of infiltration and activity in the program of World Communist leaders to destroy the United States, and that the Communist Party is keen to organize educators and intellectuals because they are molders of public opinion. The teaching profession is capable of being an effective medium of Un-American propaganda activities, and therefore an investigation of its members who are or who have been subject to the directives and discipline of the Communist Party is clearly pertinent to the investigation which the Committee was authorized to make.

The defendant had informed the Committee prior to the time the question covered in count 11 was asked that he had been employed as a teacher since 1938 and that he was so employed at Harvard from 1938 to 1951, that when at Harvard, during the years 1940–1945 he met with a Communist Party group, that the meetings were held at the homes of members of the group, that a maximum of 7 or 8 persons attended the meetings, that approximately 14 or 15 different persons attended the meetings during those years, that the group discussed Marxian philosophy and attempted to apply what they could to present-day events on the theoretical level, that they read Communist literature, that there were discussions about the dictatorship of the proletariat, and how it was to be achieved, that he contributed money for Communist purposes, and that the person who invited him to join the group was a member of the staff of Harvard University.

■ The identity of individuals other than Mr. Singer who attended these meetings would be valuable to the Committee in securing additional information with respect to the character, extent and objects of activities carried on by members of the teaching profession who are subject to the directives and discipline of the Communist Party. It is true that the meetings took place some years ago, but the court is of the view that the past is clearly pertinent to the present nature of an organization. Communist Party of U. S. v. Subversive Activities Control Board, 96 U.S.App.D.C. 66, 223 F.2d 531, 570, certiorari granted, 349 U. S. 943, 75 S.Ct. 872, 99 L.Ed. 1270.

### III

■ Under the constitutional privilege against self-incrimination a witness may rightfully refuse to answer questions as to his connection with the Communist Party as calling for disclosure of facts tending to incriminate. Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170. The defendant when he appeared as a witness did not exercise his privilege of remaining silent concerning facts tending to connect him with the Communist Party. He freely described his Communist membership, activities, and contributions. His claim of privilege against self-incrimination was asserted in relation to the identification of other persons present at Communist meetings which he had voluntarily testified he attended.

Clearly this is a case where the defendant claimed the privilege against self-incrimination, but the issue is whether he waived his privilege of silence when he freely answered questions relating to his own connections with Communism.

In Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 442, 95 L.Ed. 344, Mrs. Rogers appeared before a grand jury and testified without objection that she had been Treasurer of the Communist Party of Denver, had been in possession of its records and had turned them over to another person. She refused to identify the person to whom she had delivered the records. At the time of her second refusal to answer in the presence of the court she claimed the privilege against

---

10. Government's Exhibit No. 7, p. 3.

11. 50 U.S.C.A. § 781.

self-incrimination. Her conviction of contempt for refusal to answer was affirmed by the Supreme Court in an opinion stating in part:

"Requiring full disclosure of details after a witness freely testifies as to a criminating fact does not rest upon a further 'waiver' of the privilege against self-incrimination. Admittedly, petitioner had already 'waived' her privilege of silence when she freely answered criminating questions relating to her connection with the Communist Party. But when petitioner was asked to furnish the name of the person to whom she turned over Party records, the court was required to determine, as it must whenever the privilege is claimed, whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures. As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination. After petitioner's admission that she held the office of Treasurer of the Communist Party of Denver, disclosure of acquaintance with her successor presents no more than a 'mere imaginary possibility' of increasing the danger of prosecution."

The court finds that Mr. Singer waived the privilege by his answers to prior questions concerning his Communist Party affiliation and activities, and that the answer to the question in count 11 (as to whether named individuals were present at Communist meetings which he had previously admitted attending) would not subject him to any real danger of further incrimination.

### IV

The court finds the defendant, Marcus Singer, guilty as to count 11 and not guilty as to counts 1, 3, 4, 5, 6, 7, 8, 9, and 10 of the indictment.