**Lloyd BARENBLATT, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

**No. 13327.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 23, 1957.

Decided Jan. 16, 1958.

Mr. David Scribner, New York City, of the bar of the Court of Appeals of New York, *pro hac vice*, by special leave of Court, with whom Mr. David Rein, Washington, D. C., was on the brief, for appellant.

Mr. William Hitz, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll, John D. Lane and Harold D. Rhynedance, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

On January 3, 1957, this court affirmed the conviction of Barenblatt on the charge of contempt of Congress.[1] Petition for certiorari was duly filed in the Supreme Court and on June 24, 1957, the following *per curiam* order was entered: [2]

"The petition for writ of certiorari [in this case] is granted. The judgments of the Court of Appeals for the District of Columbia Circuit is vacated and case is remanded for consideration in light of Watkins v. United States, 354 U.S. 178, 77 S. Ct. 1173 [1 L.Ed.2d 1273]."

The present opinion is written in obedience to the above order.[3]

The facts concerning this case are sufficiently stated in the opinion of this court dated January 3 and need not be repeated here. Also, we limit ourselves to the directions of the Supreme Court and consider only the impact of Watkins on the instant case, except that we have also weighed the applicability of Sweezy v. State of New Hampshire, infra.

The Supreme Court in Watkins held that the witness there was not accorded a fair opportunity to determine whether he was within his rights in refusing to answer the questions involved and therefore his conviction was invalid under the Due Process Clause of the Fifth Amendment; and that no clear understanding of the question under inquiry could be gathered from the resolution setting up the Standing Committee on Un-American Activities, from the action of that Committee in authorizing the creation of the Subcommittee before which Watkins appeared, from the statement of the chairman at the opening of the hearings at which Watkins appeared, or from the statement of the chairman in response to Watkins' protest.

At the hearing before us on remand two points are mainly relied upon by appellant: First, it is claimed that the opinion of the Supreme Court in Watkins struck down the resolution creating the Standing Committee on Un-American Activities (hereinafter referred to as the Committee), and that prosecution based on refusal to answer questions asked by the Committee or a Subcommittee questioning thereunder must necessarily fall in that the resolution on which the indictment is based fails to meet the requirements of due process; and second, assuming this was not the case, that part of the opinion in Watkins relating to pertinency is dispositive of the present case.

As to the first point, such infirmity of the resolution as may be said to exist does not affect the indictment and, in any event, is a matter of affirmative defense. It is quite true that the Supreme Court in no uncertain terms criticized the resolution creating the Committee for lack of specificity, for uncertainty, for vagueness, and the scope of the construction accorded to the resolution as acted upon by the members of the Committee and its Subcommittees. It would serve no useful purpose to review in detail all the criticisms directed by the Supreme Court to the resolution and the construction placed thereon by the Committee and its Subcommittees as they were constituted over the fifteen years of their existence; but in the margin are contained certain of the comments thereon by the Supreme Court.[4]

■ Against the background of its views so voiced, the Court considered,

1. 1957, 100 U.S.App.D.C. 13, 240 F.2d 875.

2. 1957, 354 U.S. 930, 77 S.Ct. 1394, 1 L.Ed.2d 1533.

3. Although Barenblatt v. United States, supra note 1, was heard in this court before a division of three judges, we *sua sponte* determined to hear the case on remand *en banc*.

4. "It would be difficult to imagine a less explicit authorizing resolution." 354 U.S. 178 at page 202, 77 S.Ct. at page 1187.

"* * * An excessively broad charter, like that of the House Un-American Activities Committee, places the courts in an untenable position if they are to strike a balance between the public need

in terms presently relevant, the relationship of congressional investigating committees and the witnesses who appear before them. The opinion in Watkins clearly describes five criteria by which the pertinence of a question can be made clear to a witness (354 U.S. 178, 209, 211, 212, 213, 214, 77 S.Ct. 1173, 1191, 1192, 1193): (1) the authorizing resolution, (2) opening remarks of the chairman, members, or counsel of the Committee, (3) the nature of the proceedings, (4) the questions themselves, and (5) the chairman's response to an objection on pertinency.

▆ There are several reasons which we believe militate against the conclusion urged by appellant in this case that the resolution itself was struck down and that, consequently, the prosecution based on failure to answer questions propounded by the Subcommittee was fatally defective.

In the first place, we believe that if the Court had intended to strike down the resolution, it would have said so in so many words. It would not have left so vital an issue to inference or interpreta-

tion. The far-reaching result of such a holding would be that the Committee, established by action of the entire House of Representatives, would be rendered helpless and would not even be able to summon a witness, much less have him testify. Nothing less would be an immediate consequence. Certainly nowhere in the Watkins opinion does the Court use language essential to effectuate the result contended for by appellant and, on remand, there is no such direction to us to strike down the resolution or to hold invalid the indictment brought for failure to answer questions pertinent to the subject under inquiry. In the absence of a clear expression from the Court we do not take this position.

In the second place, had the Supreme Court struck down the resolution creating the Committee the matter would have been ended, without the further, extended discussion found in Watkins. We cannot assume the rest of the opinion to be, nor do we read it as, mere dictum. On the contrary, it is clear the Court was familiar with the present case as it is specifically referred to in

for a particular interrogation and the right of citizens to carry on their affairs free from unnecessary governmental interference. It is impossible in such a situation to ascertain whether any legislative purpose justified the disclosures sought and, if so, the importance of that information to the Congress in furtherance of its legislative function. The reason no court can make this critical judgment is that the House of Representatives itself has never made it. Only the legislative assembly initiating an investigation can assay the relative necessity of specific disclosures." 354 U.S. at pages 205–206, 77 S.Ct. at page 1188.

But the Court added:

" * * * Applied to persons prosecuted under § 192 [2 U.S.C.], this raises a special problem in that the statute defines the crime as refusal to answer 'any question pertinent to the question under inquiry.' Part of the standard of criminality, therefore, is the pertinency of the questions propounded to the witness." 354 U.S. at page 208, 77 S.Ct. at page 1190. " * * * It is obvious that a person compelled to make this choice is entitled to have knowledge of

the subject to which the interrogation is deemed pertinent. That knowledge must be available with the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense. The 'vice of vagueness' must be avoided here as in all other crimes. *There are several sources that can outline the 'question under inquiry' in such a way that the rules against vagueness are satisfied. The authorizing resolution, the remarks of the chairman or members of the committee, or even the nature of the proceedings themselves, might sometimes make the topic clear*. This case demonstrates, however, that *these sources* often leave the matter in grave doubt." 354 U.S. at pages 208–209, 77 S.Ct. at page 1190. (Emphasis added.)

This indicates to us that it is possible for the Committee itself or the nature of the proceedings themselves "to make the topic clear," i. e., so to outline the question under inquiry as to satisfy the rules against vagueness. The Court found that Watkins had no such guide.

note 34 of the opinion in Watkins. The Court certainly knew, therefore, that Barenblatt's conviction grew out of testimony taken under the same resolution. Moreover, it is reasonable to assume that, had the resolution under which both Watkins and Barenblatt were questioned been stricken in its entirety, this case would have been *reversed* on authority of Watkins rather than *remanded* for consideration "in light of" that opinion. We read Watkins as demonstrating the necessity of more than ordinary caution in upholding First Amendment rights of individuals who are summoned before committees or subcommittees which operate under resolutions infected with the vagueness criticized in Watkins.

We do believe that the Supreme Court was of the opinion that the vagueness of the resolution made it necessary, and only fair, that the witness be apprised of the particular matter under inquiry by the Committee or Subcommittee holding the hearings, and, on objection, of the pertinency of the questions involved in the inquiry.

Thirdly, the Supreme Court cited in Watkins a number of cases, both in that Court and in Courts of Appeals, bearing on convictions sustained under the same resolution.[5] There is no suggestion that those decisions were repudiated or that their reasoning was erroneous. One finds no intimation that the cases should have been decided by the simple process of voiding the resolution establishing the Committee. We are of clear opinion that Watkins did not void H. Res. 282, 75th Cong., 3d Sess., or H. Res. 5, 79th Cong., 1st Sess.[6]

Apart from our present review in light of Watkins, we have reconsidered the case also in light of Sweezy v. State of New Hampshire, 1957, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311. Appellant argues that there the Court emphasizes by analogy the fallibility of the resolution creating the Committee. Sweezy refused to answer questions in the course of an investigation by the State Attorney General acting under a resolution of the State Legislature relating to subversive activities. The Supreme Court there held that the investigation had deprived Sweezy of due process of law under the Fourteenth Amendment, and concluded that the record did not sustain the power of the State of New Hampshire to compel the disclosures that the witness refused to make. At the outset of the hearing, Sweezy had raised the question of pertinency as well as the question of violation of First Amendment rights. The Court further pointed out that there was no assurance that the legislature wanted answers to certain questions asked by the Attorney General, to whom the legislature had delegated the duty of making the investigation.

We think that Sweezy does not compel us to hold, under the circumstances of the instant case, that any of appellant's constitutional rights were violated.

In the Watkins case, having held that the resolution was not sufficiently specific, standing alone, to advise the witness of the question under inquiry, or at least having expressed doubt, the Supreme Court considered whether the statement of the chairman of the Subcommittee was sufficient to apprise Watkins of the matter under inquiry and whether, when Watkins objected to the questions on the ground of pertinency, the chairman's response was adequate to

5. See, among others, Quinn v. United States, 1955, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964; United States v. Bryan, 1950, 339 U.S. 323, 70 S.Ct. 724, 94 L. Ed. 884; Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241, certiorari denied 1948, 334 U.S. 843, 68 S. Ct. 1511, 92 L.Ed. 1767, rehearing denied 1950, 339 U.S. 971, 70 S.Ct. 1001, 94 L. Ed. 1379; United States v. Josephson, 2 Cir., 1947, 165 F.2d 82, certiorari denied 333 U.S. 838, 68 S.Ct. 609, 92 L. Ed. 1122, rehearing denied 333 U.S. 858, 68 S.Ct. 731, 92 L.Ed. 1138, motion for leave to file second petition for rehearing denied 1948, 335 U.S. 899, 69 S.Ct. 294, 93 L.Ed. 434.

6. Watkins, notes 35, 36.

convey sufficient information on this point. The Court observed that that statement was nothing more than a paraphrase of the resolution itself and gave Watkins insufficient information concerning the subject under inquiry. The investigation there was in connection with communist infiltration in labor and the Court found that a majority of the witnesses were not connected with labor at all, and that seven of the thirty persons whose names were propounded to Watkins had no such connections. The Court wrote that the "inference becomes strong that the subject before the Subcommittee was not defined in terms of Communism in labor," and concluded that the question under inquiry was not adequately revealed to Watkins when he had to decide, at his peril, whether or not to answer. The Court declared that "fundamental fairness demands that no witness be compelled to make such a determination with so little guidance."

The Watkins situation is a far cry from that of Barenblatt. The record here discloses that at the opening of the hearings before the Subcommittee on February 25, 1953, the chairman made a statement of the purpose of the inquiry, the concluding part of which reads as follows:

> "[T]he objective of this investigation is to ascertain the character, extent and objects of Communist Party activities when such activities are carried on by members of the teaching profession who are subject to the directives and discipline of the Communist Party."[7] (Emphasis added.)

Comparison of this statement with the initial statement of the chairman discussed in the Watkins case, found by the Court to be insufficient, suggests a like infirmity. So regarded, we put aside the chairman's statement as a factor even though the fact that Barenblatt had prepared his statement as to his objec-

tions to the jurisdiction of the Committee (infra, 101 U.S.App.D.C. ——, 252 F.2d 134, 135 et seq.) indicates that he quite well knew the nature of the hearing.

We examine the record then from other approaches. It appears that Barenblatt was summoned to appear before the Subcommittee at 10:30 A.M. on June 28, 1954, and that the session was called to order at 10:37 A.M. It may be presumed that Barenblatt was then present since there is no suggestion that he failed to obey the subpoena. At no time during the present hearing, or in the District Court, was it claimed that Barenblatt was not present when committee counsel, that day, made his statement as to the purpose of the hearing. As a matter of fact, it is not denied even at this time that Barenblatt was then present. In addition also is the fact that Barenblatt testified that he had heard the testimony of Crowley, the first witness called.

Included in the statement of committee counsel at the June 28, 1954, hearing was the following:

> "The field covered will be in the main communism in education and the experiences and background in the party by Francis X. T. Crowley. It will deal with activities in Michigan, Boston, and in some small degree, New York."[8]

The question under inquiry was clearly indicated to the witnesses that day. From what we have said, as well as from what follows in his own testimony, it may fairly be inferred that Barenblatt was present and received the same information.

The next standard discussed by the Supreme Court is the nature of the proceedings. Barenblatt testified the same day as did Crowley, who identified him (Barenblatt) as a member of the Haldane Club of the Communist Party at the University of Michigan. Some of

---

7. The entire statement is quoted as an appendix to the opinion of this court dated January 3, 1957.

8. 240 F.2d at page 881, note 8.

the other witnesses who testified were members of the Communist Party and others, including Barenblatt, were charged with being members of the Communist Party while at the University of Michigan several years before the hearings. All questions related to communist activity at the university, and it is clear that Barenblatt had knowledge that this was the subject matter being inquired into. We are of opinion that the nature of the proceedings, which Barenblatt personally observed, clearly indicated to him the question under inquiry.

The next standard discussed by the Supreme Court was the nature of the questions as put.[9] Here, Barenblatt was asked specifically about his membership in the Haldane Club of the Communist Party while he attended the University of Michigan and was a student of the University of Michigan Council of Arts, Sciences, and Professions. These questions, and the balance of the questions forming the basis of the indictment, viewed in the light of what the committee counsel had said and Crowley's preceding testimony, all in Barenblatt's presence, made indubitably clear to Barenblatt the nature of the subject under inquiry to which the questions were directed.

The record of the hearing, at which Barenblatt appeared and during which the questions in controversy were asked, is devoid of any objection interposed on the ground of pertinency. Indeed, every indication is that he came prepared to refuse to answer any questions of moment —pertinent or not. He appeared before the Subcommittee accompanied by counsel and armed with an eleven-page prepared, written statement entitled "Objections to Jurisdiction of the Committee on Un-American Activities and to Questions Propounded by It," objecting "not only to the jurisdiction of the committee, but also to the questions propounded by it.

This objection [the statement continues] is made upon advice of counsel as to my rights as provided for in rule VII of the rules of procedure of this committee. Counsel who appear for me are Philip Wittenberg and Irving Like of 70 West 40th Street, Borough of Manhattan, New York City."

The statement can best be described as a lengthy legal brief attacking the jurisdiction of the committee to ask appellant any questions or to conduct any inquiry at all, based on the First, Ninth and Tenth Amendments, the prohibition against bills of attainder, and the doctrine of separation of powers. This brief cited more than twenty Supreme Court decisions, some of which do not concern the congressional power of investigation; and, in several instances, dissenting opinions were cited. Included in this statement are the following:

"1. I, Lloyd Barenblatt, having been subpenaed before the Committee on Un-American Activities, by subpena dated the 28th day of May 1954, returnable on the 28th day of June 1954, hereby respectfully object to the power and jurisdiction of this committee to inquire into—

(a) My political beliefs;

(b) My religious beliefs;

(c) Any other personal and private affairs;

(d) My associational activities.

"2. I am a private citizen engaged in work in the fields of education and research, and in writing and speaking in connection therewith. I hold no office of public honor or trust. I am not employed by any governmental department. I am not under salary or grant from any governmental department.

"3. The grounds of my objection are as follows:

9. The Supreme Court in Watkins said (354 U.S. at page 213, 77 S.Ct. at page 1192): "The most serious doubts as to the Subcommittee's 'question under inquiry,' however, stem from the precise questions that petitioner has been charged with refusing to answer. Under the terms of the statute, after all, it is these which must be proved pertinent."

"A. Any investigation into my political beliefs, my religious beliefs, any other personal and private affairs, and my associational activities, is an inquiry into personal and private affairs which is beyond the powers of this committee.

\* \* \* \* \* \*

"D. Under our Constitution our Government is a government of limited powers, tripartite in form, consisting of the legislative, the judicial, and the executive. This separation is fundamental to the preservation of the rights of the people in order that no one department may, through its power, rise to become a despotic arbiter. This committee through this investigation into my political, associational, religious, and private affairs trespassed upon the judicial department and has caused a lack of balance of power which constitutes a threat to my liberty as an American citizen and is an unconstitutional usurpation.

\* \* \* \* \* \*

"This committee, by compelling me to leave my ordinary pursuits and to attend before it for the purpose of testifying with regard to my political beliefs, my religious beliefs, other personal and private affairs, and my associational activities, is acting as a judicial indicting and accusatory power. It is intruding into the judicial sphere and is following a practice which closely parallels the practices which resulted in bills of attainder being prohibited by our Constitution (art. I, sec. 10).

\* \* \* \* \* \*

"Upon all the grounds aforesaid I object not only to the jurisdiction of this committee, but also to the questions propounded by it. This objection is made upon the advice of counsel as to my rights as provided for in rule VII of the rules of procedure of this committee."

To indicate the length to which the Subcommittee went to indicate to Barenblatt the pertinency of the questions, even though the question of pertinency was not raised by him, we quote from the record of Hearings before the Committee on Un-American Activities, House of Representatives, 83rd Congress, 2d Session, Communist Methods of Infiltration (Education—Part 9, pp. 5813–14):

"Mr. Doyle [Representative Doyle]. Mr. Chairman, I think the record should show that at this time there are pending before the United States Congress several active bills dealing with the question of subversive activities, dealing with the question of the Communist Party, dealing with the question of the responsibility that we have as a congressional committee under Public Law 601.

"I am sure that is the record, and I would like the record of this hearing of this committee to especially show it—

"Mr. Velde [Representative Velde]. Yes, I think—

"Mr. Doyle (continuing). And that this witness and these other witnesses could help us in line with our Public Law 601 responsibility to have hearings with reference to recommendations for legislation in this area under Public Law 601 in accordance therewith.

"Mr. Velde. I concur with you, Mr. Doyle, and I wish to further state that the record should show that the evidence or information contained in the files of this committee, some of them in the nature of evidence, shows clearly that the witness has information about the Communist activities in the United States of America, particularly while he attended the University of Michigan.

"That information which the witness has would be very valuable to this committee and its work.

"It is the opinion of the committee, at least the Chair, that the committee has a constitutional legal right in all ways and forms and means to get the information which has been requested from the witness."

Whenever appellant was asked a question which he refused to answer, he asked permission, or attempted without permission, to read the prepared statement. That statement, which was inserted in the record of the hearing at which Barenblatt testified, in no way indicates that he had any doubt as to the subject under inquiry or as to the pertinency of the questions asked. On the contrary, everything points to Barenblatt's knowledge of the subject and his knowledge of the pertinency of the questions asked. Refusal to answer was based on the broad grounds above set forth. He specifically disclaimed invoking the Fifth Amendment.

Applying the Watkins ruling to this case, it will be seen that there is decisive distinction between the two. In the present case the subject of the investigation was stated to be Communist Party activities within the field of education. There was no attempt made to proceed with the hearing under a mere re-hash of the resolution creating the Committee. Here was far more than "a very general sketch of the past efforts of the Committee," as the Supreme Court said in Watkins.

While Watkins testified freely as to his own activities, he simply declined to identify members who he believed had perhaps innocently become members of or were closely connected with the Communist Party and who had subsequently withdrawn therefrom. Barenblatt, however, declined to answer either as to his own activities or the activities in general of the Haldane Club. He was represented by counsel, and presented written objections based generally on the juris-

diction of the Committee. His objections went to questions about his own activities and acts and were on specific grounds. Those objections are sufficiently described in our previous opinion.

We have considered the other questions raised by appellant on remand and which he says are material here in the light of Watkins. We think such other matters are sufficiently answered by the original opinion of this court, which by reference, for present purposes, is incorporated herein.

We are of opinion that, under the standards laid down for us by the Supreme Court, Barenblatt was made fully aware of the subject under inquiry and was in a position to judge the pertinency of the questions relating to that subject. We are further of the opinion that the questions were in fact relevant and pertinent to that subject.

In accordance with the direction of the Supreme Court, we have carefully considered Watkins and its impact on Barenblatt. Taking account of all circumstances as noted, and believing the cases are distinguishable as indicated, we affirm the judgment of conviction.

Affirmed.

EDGERTON, Chief Judge, whom BAZELON, Circuit Judge, joins (dissenting).

A unanimous panel of this court decided that "the opinion of the Supreme Court in Watkins v. United States * * requires reversal" of the conviction of Singer.[1] Barenblatt, like Singer, was convicted of refusing to answer questions of a subcommittee of the Un-American Activities Committee investigating Communists in the field of education. There is no difference pertinent to Watkins between Singer's case and Barenblatt's. I think this court errs in overruling our Singer decision.

I understand Watkins to hold that the Committee on Un-American Activities

1. Singer v. United States, 101 U.S.App. D.C. 129, 247 F.2d 535, reversing Singer v. United States, 100 U.S.App.D.C. 260,

244 F.2d 349, which had affirmed United States v. Singer, D.C.D.C., 139 F.Supp. 847.

had no authority to compel testimony because it had no definite assignment from Congress. The Supreme Court said: "[W]hen First Amendment rights are threatened, the delegation of power to the Committee must be clearly revealed in its charter. [354 U.S. at page 198, 77 S.Ct. at page 1184] * * * An essential premise in this situation is that the House or Senate shall have instructed the Committee members on what they are to do with the power delegated to them. * * * [T]he responsibility of the Congress * * * to insure that compulsory process is used only in furtherance of a legislative purpose * * * requires that the instructions to an investigating committee spell out that group's jurisdiction and purpose with sufficient particularity. [354 U.S. at page 201, 77 S.Ct. at page 1186] * * * It would be difficult to imagine a less explicit authorizing resolution. [354 U.S. at page 202, 77 S.Ct. at page 1187] * * * Combining the language of the resolution with the construction it has been given, it is evident that the preliminary control of the Committee exercised by the House of Representatives is slight or non-existent. No one could reasonably deduce from the charter the kind of investigation that the Committee was directed to make. [354 U.S. at pages 203-204, 77 S.Ct. at page 1187] * * * The Committee is allowed, in essence, to define its own authority * * * [This] can lead to ruthless exposure of private lives in order to gather data that is neither desired by the Congress nor useful to it. * * * Protected freedoms should not be placed in danger in the absence of a clear determination by the House or the Senate that a particular inquiry is justified by a specific legislative need. * * * An excessively broad charter, like that of the House Un-American Activities Committee, places the courts in an untenable position * * *. [354 U.S. at page 205, 77 S.Ct. at page 1188] It is impossible in such a situation to ascertain whether any legislative purpose justifies the disclosures sought * * *. The reason no court can make

this critical judgment is that the House of Representatives itself has never made it. * * * Plainly these committees are restricted to the missions delegated to them, i. e., to acquire certain data to be used by the House or the Senate in coping with a problem that falls within its legislative sphere. No witness can be compelled to make disclosures on matters outside that area." [354 U.S. at page 206, 77 S.Ct. at page 1189.]

In summary: (1) The "instructions to an investigating committee [must] spell out that group's jurisdiction and purpose with sufficient particularity." (2) "It would be difficult to imagine a less explicit authorizing resolution * * *. No one could reasonably deduce from the charter the kind of investigation that the Committee was directed to make." (3) "No witness can be compelled to make disclosures on matters outside that area." Since Congress did not define that area, there can be no proof that the Committee's questions were within it. It follows that the defendant must be acquitted.

Even if, contrary to my clear understanding of Watkins, Congress did "with sufficient particularity" authorize the Committee to investigate something, it by no means follows that Congress authorized the Committee to investigate Communists in the field of education. Four Justices of the Supreme Court recently said: "It is particularly important that the exercise of the power of compulsory process be carefully circumscribed when the investigative process tends to impinge upon such highly sensitive areas as freedom of speech or press, freedom of political association, and freedom of communication of ideas, particularly in the academic community. * * * [T]he areas of academic freedom and political expression" are "areas in which government should be extremely reticent to tread." Two other Justices said in the same case: "These pages need not be burdened with proof, based on the testimony of a cloud of impressive witnesses, of the dependence of a free society on free universities. This

means the exclusion of governmental intervention in the intellectual life of a university." Sweezy v. State of New Hampshire, 354 U.S. 234, 245, 250, 262, 77 S.Ct. 1203, 1209, 1211, 1217, 1 L.Ed. 2d 1311. The Court there held that Sweezy, a university teacher, could not constitutionally be required to answer certain questions about his political activities and connections. Barenblatt was a university teacher. He was convicted because he would not answer certain questions about his political activities and connections. Though the two cases are not identical and Sweezy does not prove that Barenblatt's conviction violates his constitutional rights, it does show that this conviction raises serious constitutional questions. Delegation of power to a congressional committee must be construed narrowly when a narrow construction avoids serious constitutional questions. United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770. The words of the Committee's charter, "investigations of * * * un-American propaganda activities", need not and therefore should not be interpreted to authorize the Committee to select for investigation political activities and connections of university teachers. We must suppose that if Congress had intended to authorize such an investigation it would have done so explicitly.

We need not consider whether the Committee's questions to Barenblatt were pertinent to an investigation of Communists in the field of education. The force of the Court's decision in Watkins that the Committee had no definite assignment, and therefore no authority to compel testimony, is not destroyed by the Court's decision that the questions Watkins refused to answer were not clearly pertinent to the investigation in which the Committee was then engaged. "[W]here there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is *obiter*, but each is the judgment of the court and of equal validity with the other.'" United States v. Title Insurance & Trust Co., 265 U. S. 472, 486, 44 S.Ct. 621, 623, 68 L.Ed. 1110. And even if the Supreme Court's demonstration that the Committee on Un-American Activities had no authority to compel testimony were *obiter*, this court should defer to it.

Although, on examination, the answer to a question is plain, higher courts commonly require lower courts to make the examination and decide the question in the first instance. The Supreme Court followed the usual practice in this case.

FAHY, Circuit Judge, with whom WASHINGTON, Circuit Judge, joins (dissenting).

Reading Sweezy in the light of Rumely and Watkins, I think the Committee could not proceed to investigate the field of education—at least with the use of compulsory process, under the sanction of contempt—without a more specific authorization than it had been given, and that therefore the conviction must be reversed. It is unnecessary here to go into the question whether Watkins holds the Committee to be without authority to compel testimony on any subject of inquiry.