May 2, 1977

## 77–23 MEMORANDUM OPINION FOR THE ACTING COMMISSIONER OF THE INTERNAL REVENUE SERVICE

### Congressional Access to Tax Returns—26 U.S.C. § 6103(f)

This is in response to your Agency's request for our interpretation of § 6103(f) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 6103(f). This section, by reason of § 1202(a) of the Tax Reform Act of 1976, now deals with the question of congressional access to Federal tax returns and tax return information. We believe that we can best respond to this inquiry by addressing the three major issues presented by the request. These issues are: (1) whether, and under what authority, a subcommittee might inspect returns and return information; (2) whether a subcommittee, acting pursuant to a delegation of authority from the committee chairman, might request returns or return information directly from the Internal Revenue Service (IRS); and (3) whether a subcommittee, acting pursuant to a request from the committee chairman to the IRS, might obtain returns or return information directly from the IRS. For the reasons that follow, it is our conclusion that subcommittees may inspect Federal tax returns and return information, but only upon a request to the IRS by the chairman of the pertinent committee, which request specifies at least the particular line of inquiry to which the information must relate.

### I. Inspection by Subcommittees

We shall first discuss the issue of a subcommittee's inspection of Federal tax returns and return information. The two provisions of § 6103(f) pertinent to this issue provide:

> Upon written request from the chairman of the Committee on Ways and Means of the House of Representatives, the chairman of the Committee on Finance of the Senate, or the chairman of the Joint Committee on Taxation, the Secretary shall furnish such

committee with any return or return information specified in such request . . . 26 U.S.C. § 6103(f)(1).

Any committee described in paragraph (1) or the Chief of Staff of the Joint Committee on Taxation shall have the authority, acting directly, or by or through such examiners or agents as the chairman of such committee or such chief of staff may designate or appoint, to inspect returns and return information at such time and in such manner as may be determined by such chairman or chief of staff. 26 U.S.C. § 6103(f)(4)(A).

It is apparent at once that subcommittees are not explicitly authorized in either of these provisions to inspect tax returns or return information. Because disclosure of tax records is prohibited "except as authorized by this title," 26 U.S.C. § 6103(a), it might be thought that there is no basis in the statute for allowing subcommittees access to such records.

Even though we are mindful that the application penalties warrant a cautious interpretation of the statute, see 18 U.S.C. § 1905, 26 U.S.C. §§ 7213, 7217, we think that the statute, considered as a whole, shows that Congress meant for subcommittees to be able to inspect tax returns and return information. We cannot imagine that Congress intended to prohibit disclosure to the subcommittees, and yet at the same time allow inspection by both the members of the subcommittees as members of the committee and by members of the subcommittees' staffs—or even to those further removed from the daily work of Congress—as "agents." The purposes underlying § 6103 do not require, and would even refute, such a proposition. While Congress was concerned about the citizens' right to privacy, it was also concerned about the Government's need for the tax information, see S. Rep. No. 938 (Part I), 94th Cong., 2d Sess. 318 (1976), and was very much aware of its own needs in this regard. *Id.* at 319–320. In this light, we do not think it a reasonable assessment of Congress' intent to say that the subcommittees—which do much of the Congress' work—cannot inspect the materials necessary to their functions.

Although the statutory text does not mention subcommittees, it nonetheless offers strong support for our conclusion here. Under the prior law, the subcommittees of the House Ways and Means Committee and the Senate Finance Committee had requested, and received, access to returns and return information held by the IRS. The language of the prior law under which such access was authorized—*i.e.,* "the Secretary . . . shall furnish such committee" and "any such committee shall have the right, acting directly as a committee, or by or through . . . examiners or agents . . . to inspect any or all of the return"—has been largely retained in the new provisions. *See* 26 U.S.C. § 6103(f)(1) and (4)(A). This reenactment of the prior provisions would suggest that the law was to remain the same and that the interpretation thereof—displayed by those subcommittees most closely associated with the tax laws—should continue.

We thus come to the question of how subcommittees are to fit within the statutory structure—*i.e.,* whether they should be regarded as "committees" or as "agents" of the committees. We would note at the outset that, under the provisions relevant here, it does not appear to be a matter of great importance whether a subcommittee is found to satisfy one term or the other; both a committee and its agents are to proceed "at such time and in such manner as may be determined by such chairman . . ." 26 U.S.C. § 6103(f)(4)(A). Nevertheless, it is our view that subcommittees are best regarded as "agents" within the meaning of the statute. Although neither the statute nor its legislative history offer much guidance on this issue, we think this result most naturally follows from the statutory language. While the term "committee' may be given a broad reading if the congressional purpose warrants it, *see, e.g., Barenblatt* v. *United States,* 240 F. 2d 875, 878 (D.C. Cir. 1957), *vacated on other grounds,* 354 U.S. 930 (1957), *aff'd on rehearing,* 252 F. 2d 129 (1958), *aff'd,* 360 U.S. 109 (1959), its usage here is with reference to specifically named full committees. Rather than contort the statutory language so that it would encompass an entity normally thought to be apart from the full committee, we prefer to view the subcommittee as coming within the term "agents." While this terminology was most probably designed with staff personnel in mind, it is certainly broad enough to encompass subcommittees whose function is to act on behalf of the full committee.

The final question that remains to be considered is whether the subcommittee may inspect tax returns and return information directly, or whether such materials must be first handed over to the full committee. Although the statute refers to the Secretary's furnishing such information to the committee, 26 U.S.C. § 6103(f)(1), we believe that direct access is permissible here. The subcommittees are themselves permitted to inspect this information, and it seems wasteful to interject a requirement that such access is allowed only after it goes to the full committee. Moreover, the provision providing for inspection of returns by agents "at such time and in such manner as may be determined by such chairman," 26 U.S.C. § 6103(f)(4)(A), seems broad enough to permit the chairman to decide to allow an immediate inspection by the subcommittee.

## II. Disclosure by Way of Delegated Authority

The second issue to be addressed is whether delegated authority under the rules of the pertinent committees is sufficient to permit a subcommittee to initiate a request for returns or return information. As we understand it, both from your letter and our conversations with members of the congressional staffs, the old law had been interpreted to allow subcommittees acting under a delegation of authority to request such material directly from the IRS. We do not believe, however, that this practice can continue under the present law. Section 6103(f)(1)

provides that the Secretary shall furnish the tax information "upon written request from the chairman of the Committee on Ways and Means of the House of Representatives [or] the chairman of the Committee on Finance of the Senate . . . ." The lack of grant of authority to the chairmen of the subcommittees, when considered in light of the general approach that "returns and return information shall be confidential" and should not be disclosed "except as authorized by this title," 26 U.S.C. § 6103(a), would indicate that they are not authorized to make requests for tax records.

Of course, as with the problem of subcommittee inspection, the lack of a specific grant of authority to the subcommittee chairmen need not be determinative. Other factors relevant here—*e.g.*, legislative history, indications in other parts of the statute, or even other provisions of law—could give rise to a conclusion that Congress intended to permit a delegation of authority. However, we do not believe that such factors lead to such a result here; rather, it is our conclusion that all such indicia are to the contrary.

Nothing in the provisions authorizing disclosure of tax information to Congress would appear to impliedly authorize a delegation of authority here. The other provisions that authorize congressional access to tax information do so only upon the written request of a specifically designated person—*i.e.*, the Chief of Staff of the Joint Committee on Taxation, or the chairman of a nontaxwriting committee that is authorized by the Senate or House to inspect tax information. *See* 26 U.S.C. § 6103(f) (2) and (3). The designation of a specific high-ranking person in each instance would suggest an intent on the part of Congress that, even among those in Congress who were authorized to inspect such material upon disclosure, only a few—those in overall charge of a particular committee's operations—could actually initiate a request for disclosure.

Other parts of § 6103 reinforce this conclusion. The statute in many instances requires that disclosure to other parts of the Government be made upon the written request of the highest-ranking official in the particular office making the request. For example, the President himself must sign a request for a tax return to be made available to the White

House, 26 U.S.C. § 6103(g)(1); [1] similarly, the heads of various State or Federal agencies appear to be required to sign requests before disclosure can be made to those agencies. *See, e.g.,* 26 U.S.C. §§ 6103(j)(1) and (2), 6103(k)(5), 6103(l)(5).[2] The apparent purpose underlying such requirements would be that, in order to ensure that disclosure is warranted, the highest-ranking official of a particular governmental unit would have to pass upon and approve any request for disclosure. This purpose would be no less forceful with respect to Congress, and the fact that the provisions applicable to Congress adhere to the approach of specifically designating a high-level official would suggest an intent to adopt the same means—*i.e.,* personal authorization—in achieving the overall goal.

This point is highlighted by the fact that, when Congress deemed it necessary to allow for a subordinate official's authorization, it did so explicitly. For example, various provisions allow subordinate Department of Justice officials to request disclosure, *see* 26 U.S.C. §§ 6103(h)(3)(B), 6103(i)(1)(B); the same is true with regard to other departments. *See, e.g.,* 26 U.S.C. § 6103(j)(3) (relating to subordinate officials of the Department of the Treasury). The existence of such provisions demonstrates that the need for allowing subordinates' authorization of disclosure was considered, and passed upon by Congress; the fact that no such authorization was provided the chairmen of subcommittees must indicate that it was not intended that they have such authority. *Cf., Cudahy Packing Co.* v. *Holland,* 315 U.S. 357, 365–66 (1942).

The legislative history is not very informative on this question. The legislative reports, in addressing this issue, simply state that the committees will have access to tax information "upon written request of their

---

[1] The fact that the statute requires the President to "personally" sign such requests does not, in our view, imply that such authority can be delegated in the absence of such a requirement. This requirement was first adopted in Executive Order No. 11805, 3 CFR 896 (1971–75 compilation); the legislative history of the statute makes clear that the statute was largely designed to codify the provisions of the Executive order. *See* S. Rep. No. 938 (Part I), *supra* at 322 Moreover, in view of the broad powers of delegation conferred on the President by other provisions of law, *see* 3 U.S.C. §§ 301–302, such terminology was necessary to ensure that the President himself sign the pertinent requests. In light of these considerations, we do not believe the absence of such an explicit requirement with respect to the committee chairmen can be taken as an indication that Congress did not intended to require them to sign requests for disclosure. Indeed, the fact that the President himself must sign such requests would suggest that a similar requirement would attach to all officials who were specifically designated to sign written requests.

[2] It seems clear that agency heads are required by the statute personally to sign requests for disclosure. Previously, Treasury regulations had allowed for disclosure upon the written request or notice by the heads of various agencies, *see, e.g.,* 26 CFR § 301.6103(a)—102, 103, and 104 (1975). This requirement had been interpreted to require that the head of the department actually sign the request, *see* Hearings on Federal Tax Return Privacy before the Subcommittee on Administration of the Internal Revenue Code of the Senate Committee on Finance, 47–48 (1975). The present law, by enacting in many instances language similar to that used in the regulations, presumably did so in light of this interpretation—particularly in view of the fact that the underlying purpose was to tighten up on the disclosure of tax records.

89

respective chairmen." H.R. Rep. No. 1515, 94th Cong., 2d Sess. 476 (1976); *see also* S. Rep. No. 938 (Part I), *supra* at 320. This statement, by itself, is not particularly helpful, since it merely restates the language that is at issue here. It does serve, however, to rebut the proposition that Congress meant to allow for more persons to authorize disclosure than it provided for in the statute itself. The absence of any other references to the question of delegation in the legislative materials is even more telling. It seems to us most unreasonable to assess congressional intent as allowing for delegation where, in a statute meant to restrict even congressional access, *see* S. Rep. No. 938 (Part I), *supra* at 319–20, Congress clearly did not provide for delegation in the statute and said nothing on the matter in the legislative record.

Of course, if there had previously existed a provision explicitly allowing for a broad delegation of the chairmen's authority, it could perhaps be said that the present legislation contemplated that such a provision would be applicable here. However, our research has uncovered no such general authority. To the contrary, it appears that, in matters akin to the one at issue, Congress' practice is to provide specifically for a delegation where it wishes to allow for one. For example, in legislation providing for congressional subpoenas, the statutes often provide explicitly that the subpoenas may be signed by either the chairman or another member designated by him or the pertinent committee, *see, e.g.,* 2 U.S.C. §§ 413, 473(d). In contrast, other provisions lack such an authorization of delegation and allow only specifically named persons to sign subpoenas. *See, e.g.,* 26 U.S.C. § 8021(b)(2). It is evident that Congress chose to adopt this latter approach with respect to committee access to tax records; we thus do not believe it appropriate here to allow for a delegation where Congress itself, in contrast to the pattern adopted in other instances, has not seen fit to provide one.

The fact that it was the past practice of the committees involved to delegate authority to subcommittees to request information directly from the IRS is not enough, in and of itself, to justify continuing such a practice under the new law. The statute here was designed to tighten the rules for disclosure, and a reference to past practice therefore provides little in the way of guidance under the new law. While we have relied on past practices in determining that subcommittees were to continue to have access to tax returns and return information, our rationale for doing so was that such practices reflected Congress' interpretation of language carried over into the present statute. In contrast, the language relating to requests by Congress for tax information has been changed, and thus past practice is of little help in determining Congress' view of the present wording.

It has been suggested by members of congressional staffs that the statutory language allowing examiners and agents "to inspect returns and return information at such time and in such manner as may be

determined by such chairman" might allow delegation of authority here. It seems to us, however, that this provision relates to the persons to whom tax information might be disclosed, and does not address the question of which persons might request disclosure from the IRS. This latter issue is specifically dealt with by other language in the statute, and to give the above-quoted language its suggested broad sweep would simply disregard that more specific language.

We recognize that subcommittees of the Senate Finance Committee and the House Ways and Means Committee are authorized to "require by subpoena or otherwise . . . the production of such correspondence, books, papers, and documents . . . as it deems advisable." 2 U.S.C. § 190b(a). *See also* House Rule XI(m)(1)(B). While this provision could obviously be read to encompass tax records, we believe that Section 6103, both in its terminology—"upon written request from the chairman"—and in its evident purpose to restrict even congressional access to tax information, necessarily delimits the grant of authority specified in these provisions insofar as tax records are concerned.

### III. Disclosure by Way of a Chairman's Request to the IRS

Your letter further inquires whether the chairman of a committee might request the IRS to furnish the subcommittee such returns or return information as the subcommittee might request. There are two different situations where this problem might develop; the first is where a chairman would make one "blanket" request that the IRS thereafter comply with any request on any matter made by the subcommittee. We do not believe that either the language 'of the statute, or the purpose underlying it, would allow for such an approach. Section 6103(f)(1) provides for the disclosure of "any return or return information *specified* in such request." [Emphasis added.] This would appear to require that the request of the chairman mention or name in a specific or explicit manner the information sought. A request by a chairman that the IRS comply with a certain subcommittee's subsequent requests would not, in our view, meet this requirement; while the chairman could perhaps be said to have "specified" that certain information—*i.e.,* that requested by the subcommittee—be furnished, he has hardly identified that information precisely or in detail. A more important factor here, however, is that such a request by the chairman would depart from Congress' apparent purpose of having the chairman pass upon each request and, in effect, would amount to a delegation of authority to the subcommittee to proceed on its own. We have in the discussion set forth above concluded that this is not within Congress' intent, and as such do not believe that it can be accomplished under the form of such a "request" to the IRS.

The chairman could, however, at times make a more limited request that the IRS furnish a subcommittee with materials pertinent to a particularized inquiry; we believe that this would be permissible under

91

the statute. A request for materials relating to a particular line of inquiry seems to us to comport sufficiently with the statutory requirement that requested information be "specified." While the chairman may not know at the time of the request the exact information sought, he will be informed of the general nature of the information to be requested and the reasons for doing so—thereby fulfilling, in our view, the purposes served by the requirement of personal approval.

The purposes of the statute also support this approach in a broader sense. As a practical matter, it is necessary to proceed in this manner if subcommittees are to function effectively; the need for certain information may not become apparent until a subcommittee's hearings have already begun, and it is simply not practical to have the chairman sign a request for information each time this occurs. As we discussed above, the general thrust of the statute is to reconcile the need for confidentiality of tax returns with the need for disclosure to further the Government's work. A determination here that would effectively curtail the subcommittee's work would not comport with this overall goal; rather, we think the underlying aim of a balance is achieved by requiring the chairman to pass upon the subcommittee's requests, and yet allowing those requests to specify information relating to a particular line of inquiry rather than setting forth exactly the returns and return information sought.

## Conclusion

We conclude that subcommittees are entitled to inspection of tax returns and return information directly, provided that the committee chairman's request for such information specifies at least what line of inquiry the information is to relate to. A delegation of authority from the chairman to the subcommittee, or a "blanket" request from the chairman to the IRS, is not sufficient under the statute to allow the subcommittees access to the relevant materials.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*
