No. 4151

**Second Circuit**

(First Division)

OSBORNE v. PEOPLE'S BENEV. INDUS-
TRIAL LIFE INS. CO. OF LOUISIANA

(February 16, 1932. Opinion and Decree.)
(March 16, 1932. Rehearing Refused.)

Leo Gold, of Alexandria, attorney for plaintiff, appellant.

Lee J. Novo and G. Purnell Whittington, of Alexandria, attorneys for defendant, appellee.

CULPEPPER, J. Plaintiff sued to recover under an insurance policy covering life, sick, and accident insurance combined, issued to plaintiff by the defendant company, of date June 21, 1920. From a judg-

ment rejecting plaintiff's demands, he has appealed.

It is alleged by plaintiff that the premiums on the policy had been kept paid, and that none were due at the time of the alleged accidental injury, which occurred on September 28, 1929, for which indemnity under the accidental indemnity clause therein is claimed.

Defendant in answer denies the allegation that all premiums were paid up at the date the injury is alleged to have occurred, denies that the injury complained of was accidental, but avers that same was caused to be inflicted upon plaintiff by reason of acts of his own which acts constituted violations of the laws of the state of Louisiana, and which constituted a violation of the conditions and covenants contained in paragraph 6 of the policy of insurance, which reads as follows:

"Neither shall it (the insurer) be liable for death or injury received while in the commission of, or as punishment for, some act in violation of any law, nor for injury, sickness or death resulting from the malicious or unlawful act or the culpable or intentional negligence of any beneficiary hereunder."

Defendant also filed an exception of no right or cause of action, which appears to have been overruled by the court. We assume the exception has been abandoned, since same is not being urged before this court.

Plaintiff brought proceedings by rule to take judgment on the face of the pleadings, after answer was filed, which upon trial of same was also denied. Plaintiff's counsel has announced in brief filed that the rule has been abandoned due to the fact that defendant in its answer denied the allegation of payment of premiums. However, plaintiff now points out that upon the trial there was no evidence produced by defendant to show plaintiff had failed in keeping up payment of premiums, and that, by an examination of the answer, particularly paragraph 3 thereof, it will show, in view of the lack of evidence of non-payment of premiums that a legal defense was not set up and judgment should now be rendered for plaintiff for that reason without considering the case on the merits.

As we understand counsel, he now contends that, since no evidence was adduced upon the trial of the case to show non-payment of premiums on the policy, the defense fails for want of proof; that therefore the only remaining defense to the action is the defense, which counsel contends is a special one, that plaintiff's injuries were due to and resulted from his own acts of violations of the law; and, that, taking the averments contained in paragraph three of the answer to be true, defendant's version of the incident, in connection with the infliction by Henry Hovell of the injuries complained of, negatives the contention that same were not accidental. While the paragraph in question is a lengthy recital of the incidents leading up to and which took place at the moment plaintiff was shot and injured by Hovell, we do not think the recitals are such as to amount to a waiver of the special defense. A portion of the averments are that plaintiff went to Hovell's store for the express purpose of cursing, abusing, and doing Hovell harm and injury, all of which, it is averred, was in violation of the law; that upon arrival at the store, plaintiff cursed Hovell, walked around the counter where Hovell was standing, approached him with his right hand in his bosom and left hand in his pocket; that, as he approached Hovell, he undertook to draw a pistol from his bosom cursing Hovell and saying as he did so that he was going to kill him, and, as thus approaching Hovell,

Hovell reached under his counter, secured a pistol, and shot plaintiff in defense of his own life. It is further averred that plaintiff was the aggressor and brought on the difficulty; that Hovell was at the time engaged in the peaceful pursuit of his own affairs in his own place of business.

While it is true, as able counsel in his lengthy and well-written brief points out, that our courts have held (citing Quatray v. Wicker et al., 16 La. App. 515, 134 So. 313) that evidence of a conviction or acquittal for the same occurrence giving rise to a civil action is not admissible in the civil action, yet we think that, where the allegations and proof set forth and show that the party seeking damages in a civil action arising out of acts of a criminal nature was the aggressor, as has been alleged, and we think abundantly proven in this case, it will corroborate the contention that plaintiff was engaged in committing acts in violation of the law at the time he was injured.

The paragraph contains the following language:

"That plaintiff walked round the counter where the said Henry Hovell was standing and approached him with his right hand in his shirt bosom and left hand in his pocket. That as plaintiff approached the said Henry Hovell he undertook to draw a pistol from his bosom, saying as he did so, 'you dirty s—— of a b——, I am going to kill you tonight,' and as he approached said Henry Hovell in the manner above set forth and undertook to draw said pistol for the purpose of killing the said Henry Hovell, the said Henry Hovell reached under the counter, drew a pistol and in defense of his own life * * * shot at plaintiff."

It is contended by plaintiff that this does not set forth acts in violation of any law; that under the terms of the policy, in order to show a legal defense against recovery for an alleged accidental injury, it must be averred in the answer that at the moment the injury was inflicted plaintiff was actually engaged in the commission of an unlawful act, counsel citing numerous authorities. We have examined most of these authorities and they appear to show counsel's contention to be the correct principle of the law on the subject. Counsel contends that defendant has not averred acts on the part of plaintiff at the moment of the infliction of the injuries, such as to constitute a violation of any law; and therefore it is urged that, in view of the fact that objections were urged upon the trial of the case to the introduction of any and all testimony in support of the averments as made, the objections should now be sustained and the testimony in that connection disregarded.

In that connection, as we view the reasons for the objections, they were that such testimony, under counsel's theory of the case, would be enlarging the pleadings.

To determine whether plaintiff's acts at the time he was injured constituted acts in violation of law, according to the language of the policy, "the commission of * * * some act in violation of any law," it will be necessary to refer to the definitions of some of the crimes or misdemeanors given in the statutes or by the law-writers on the subject.

Under section 797 of the Revised Statutes of Louisiana, it is a violation of the law for one person to make an assault upon another.

"An assault is an intentional attempt, by violence, to do an injury to the person of another." State v. Davis 23 N C. (1 Iredell's Law) 125, 35 Am. Dec. 735.

"Assault is an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another." Words

& Phrases, Third Series, 642; People v. Cieslak, 319 Ill. 221, 149 N. E. 815.

Assault does not include battery but battery includes assault. Harris v. State, 15 Okl. Cr. 369, 177 P. 122.

In State v. Davis, above cited, the court uses the following language:

"It is difficult in practice, to draw the precise line which separates violence menaced from violence begun to be executed —for until the execution of it is begun, there can be no assault. We think, however, that where an unequivocal purpose of violence is accompanied by any act, which, if not stopped—or diverted—will be followed by personal injury—the execution of the purpose is then begun—the battery is attempted.

"Thus, riding after a person—so as to compel him to run into a garden for shelter to avoid being beaten, has been adjudged to be an assault. Morton v. Shopple, 3 Car. & P. 373. So, in a late case, before a very eminent English judge, it was held, that where the defendant was advancing in a threatening attitude, with intent to strike the plaintiff, so that his blow would, in a second or two, have reached the plaintiff, if he had not been stopped, although when stopped he was not near enough to strike, an assault was committed. Stephen v. Myers, 4 Car. & P. 349."

Volume I, Words & Phrases (Third Series) at pages 642-644, used the following illustrations from authorities in discussing assault with deadly weapon:

"In prosecution for assault with deadly weapon, where accused visited wife's apartment with a revolver in his sock, evidence held sufficient to show intention and present ability to kill her as elements of an 'assault,' which is an unlawful attempt, coupled with present ability, to commit a violent injury on a person." People v. Hunter, 71 Cal. App. 315, 235 P. 67.

"An 'assault' necessarily includes an attempt, and consists of an unlawful attempt or offer to apply force to another with intent to do physical injury, and with the

present means to give it effect." State v. Roby, 194 Iowa, 1032, 188 N. W. 709, 711.

"An intention to do harm is of the essence of an assault." State v. Kunkel (Mo. App.) 244 S. W. 968, 969.

"To render one guilty of assault, it is sufficient that the act done is with intent to put the party assailed in fear or apprehension of bodily harm, though with no intent to strike, and that by the act he is in fact put in well-founded fear or apprehension of such harm." Burgess v. Commonwealth, 136 Va. 697, 118 S. E. 273, 275.

"A bare intent to commit an assault unless followed by some hostile demonstration will not constitute an assault." State v. Lemon (Mo.) 263 S. W. 186, 188.

Under the above definitions of assault, the answer, we think, sets forth a legal defense, and therefore the objections urged to the testimony were properly overruled.

The proof in support of the averments in the answer appears ample as going to show that plaintiff, Mathew Osborne, was at the moment Henry Hovell shot him, actually and in fact committing the unlawful act of an assault upon Hovell.

Hovell testified, and his testimony was corroborated by the testimony of three other disinterested witnesses, that, when Osborne came into Hovell's store, he had his right hand in his bosom, his left hand in his pocket, and immediately began cursing Hovell and telling Hovell he was going to kill him; that he proceeded to walk around behind the counter where Hovell was standing, and continued in that threatening and menacing manner approaching Hovell until within only a few feet of Hovell when Hovell shot him. Hovell, in giving an account of Osborne's actions, testified (quoting):

"He came in with his right hand in his bosom, left hand in his pocket, cursing me for everything he could call me, walking to the back of the store; then turned and came behind the counter and said, 'You dirty s——— b——— I am going to

kill you tonight.' Then starts up with his gun and when he did, I shot him.

"Q. He made an actual attempt on your life?

"A. Yes, sir.

"Q. Did you see the gun, Henry?

"A. Yes, sir.

"Q. Then you shot him?

"A. Yes, sir."

The other three witnesses all testified to the same effect, except that they say they did not see the gun (pistol). They explained, however, that Osborne, at the time Hovell shot, was behind the counter from where they were standing, and they could see Osborne only from his shoulders up on account of some boxes on the counter which obstructed the view.

One of these witnesses, W. H. Howard, was asked:

"Q. Were you given the impression that Osborne meant business?

"A. Yes, sir, sure did.

"Q. And that he really was going to kill Henry Hovell?

"A. Yes, sir, I believe that."

The other two eyewitnesses testified to the same effect. Hovell declared he shot Osborne in self-defense.

Plaintiff testified he had no gun of any kind at the time. Admits that he had his hand in his bosom and cursed Hovell and walked around the counter to where Hovell was standing, but that he did so as a joke and in fun, just to frighten Hovell, knowing Hovell was excitable and easily frightened, and that he and Hovell had on many occasions previous jokingly cursed one another, and that they were good friends. Says he had no intention of hurting Hovell. Hovell, however, denies that he and plaintiff were good friends, and denies that they had ever cursed or joked at one another, but on the contrary he had asked Osborne to stay away from his store, told him to stay away, and even that Osborne had treated him "so dirty" he had a number of times shut his store to prevent Osborne from entering when he would see him coming.

It is in evidence that, when plaintiff was taken up from the street, where he walked to after being shot, no pistol was found on or about his person; that some few minutes had elapsed from the time he was shot until he was noticed by some one passing and was picked up and carried to the hospital. There was also the evidence of his mother and one or two others that no pistol was seen on his person when he left his mother's home, only a short distance away, to go to Hovell's store. Plaintiff testified, as also did his mother, that his purpose in going to the store was to buy some food to be eaten at his mother's home. He states that as he entered the store he cursed Hovell and at the same time asked for rolls of bread and potted ham. Hovell denies that plaintiff called for any food of any kind when he entered the store.

The trial judge, who saw and heard the witnesses testify, resolved these conflicting statements against the plaintiff, and we think properly so. We think the plaintiff has failed in his proof, and that defendant has shown by a preponderance of the testimony that plaintiff, at the moment he was shot and injured, was in the act of committing an assault upon Henry Hovell, which constituted a violation of the law of this state, such as is contemplated under the terms of the policy sued upon. All of the elements indicative of the act of commission of an assault were, we think, shown by the testimony to be present. That the intent was present has been amply proven.

Intent may be shown by a person's actions as well, or even better, than words he might utter. The old adage that "Ac-

tions speak louder than words" is true. Plaintiff's actions were loud-spoken in evidencing his intent to do violent injury to the person of Henry Hovell, as has been amply proven; and, in addition, he said, in unmistakable words, that he intended to do so.

That plaintiff actually attempted to do violence is shown by the testimony of Hovell who testified positively that plaintiff was in the act of pulling his pistol from his bosom the moment Hovell shot him. This was a hostile demonstration. It is true, plaintiff denies he made any such attempt, but Hovell is corroborated in his statement by that of the three witnesses present, whose testimony is that plaintiff was cursing Hovell, saying he was going to kill him, was advancing upon or had advanced to within a few feet of him, and, as it appeared to these witnesses, was at the moment about to carry out his threats. Evidently, the trial judge believed Hovell's testimony in this particular.

As to plaintiff's ability or means by which to injure Hovell, the same can be said in that particular and the same conclusions reached with equally as much certainty and correctness, as can be said about the attempt. Hovell testified positively that he saw plaintiff's pistol in his bosom and was certain that it was a pistol. Every act and word of plaintiff at the time strongly indicated that he did have one. The witnesses thought so, and so did the court, evidently, and this court thinks the evidence affirmatively establishes that fact.

That the violation of the law thus being committed by the plaintiff, at the moment he was shot and injured, was the direct, actual, legitimate, and proximate cause of the injuries, there can be no question.

For the reasons assigned, therefore, the judgment appealed from is, we think, correct, and same is affirmed.