## CAMPBELL v. METROPOLITAN CASU-ALTY INS. CO. *

### No. 1737.

Court of Appeal of Louisiana. First Circuit. Oct. 5, 1937.

Chas. J. Mundy, of New Orleans, for appellant.

Ponder & Ponder, of Amite, for appellee.

OTT, Judge.

On October 6, 1933, the defendant insurance company issued a policy to Harry Cloud wherein the company agreed, among other things, to insure said Cloud against loss resulting from bodily injury sustained solely through external, violent, and accidental means, and, where the injury resulted in death, the company agreed to pay the sum of $400 to the beneficiary, the mother of the insured, who is the plaintiff in this case.

Harry Cloud was killed on February 3, 1935, by gunshot wounds inflicted by Otis Chase, at which time the policy was in effect. The suit is by the beneficiary to recover the face value of the policy plus an additional amount of $60 claimed under a provision of the policy allowing an increase in the principal sum of 1 per cent. for each month the policy is in force preceding the accident, the increase to begin after the payment of the second month's premium.

It is alleged that the insured, Cloud, was shot and killed by Chase suddenly and without warning, and that the death of the insured thus resulted from external, violent, and accidental means within the terms of the policy. The defense is that the insured, Cloud, provoked the difficulty by advancing on Chase with a drawn knife, and that Chase shot the insured in self defense; that the insured met his death while fighting and while engaged in the commission of a felony, the policy excluding from its provisions payment for death or disability resulting while the insured was engaged in fighting, or in the commission of a felony. Certain alternative pleas are made by the defendant for a reduction of the amount of the claim in case it is held

that there is liability, these reductions being based on alleged improper classification of the insured, but, in view of the conclusions reached, it is unnecessary to outline these alternative defenses.

The trial court rendered judgment in favor of defendant, rejecting the demands of the plaintiff. She has appealed.

■ If the insured was intentionally killed by Chase, but the killing resulted from an assault made by the insured on Chase, or if the killing resulted from a difficulty provoked by the insured and in which he was the aggressor, it cannot be said that the death resulted solely from external, violent, and accidental means within the terms of the policy. See annotation following case of Employers' Indemnity Corporation v. Grant (C.C.A.) 271 F. 136, 20 A.L.R. 1123; also Franchebois v. N. Y. Life Ins. Company, 171 La. 358, 131 So. 46.

■ Likewise, if the insured met his death while engaged in a fight in which he was the aggressor and which he provoked, or if his death occurred while engaged in the commission of a felony, that is, in cutting and stabbing Chase with a knife with intent to kill, and without justification, under the terms of the policy there would be no liability. Osborne v. People's Benev. Industrial Life Ins. Co. of Louisiana, 19 La.App. 667, 139 So. 733.

It therefore follows that all three phases of the defense lead to the determination of questions of fact; i. e., was the insured the aggressor and did he provoke the difficulty in which his death occurred, and was Chase justified in inflicting the mortal wounds? The trial judge resolved these facts against the claims of the beneficiary. We are asked to review the testimony and reach a different conclusion.

There is a conflict in the testimony on the vital points in the case. The coroner's jury found that Harry Cloud came to his death from a gunshot wound of the head, and the jury exonerated Otis Chase in connection with the death. This inquest is dated December 4, 1935, while Cloud was killed on February 3, 1935. We do not know how the erroneous date arose in the inquest, and must assume that the error arose either in transcribing the proceedings of the inquest or in making the certified copy for this case, the latter being indicated by defense counsel as the cause of the error in date. In any event, we do not think this error in date is of sufficient importance to affect the result of the finding of the inquest, which, after all, only has prima facie value. Certainly, the error in date does not justify the rather severe castigation directed by counsel for plaintiff at the members of the inquest.

Otis Chase states in his testimony that Cloud walked up to him in front of the Campbell restaurant, as Chase was passing, and that Cloud said he wanted to see him; that Cloud came on him with a knife; that he tried to hold Cloud's hands to keep from being cut; that as Cloud was trying to cut him with the knife he (Chase) caught hold of the knife and received two cuts in his hand; that he continued to back away from Cloud, and was followed by Cloud within arm's length almost across the street from the restaurant; that he (Chase) reached for his gun and after getting it out Cloud caught the gun and continued trying to cut him with the knife, whereupon he shot Cloud.

Alex Lewis, a witness for defendant, says that Chase was backing up from the side of the street where Campbell's restaurant is located when he first saw Chase and Cloud fighting; that Cloud was shot and fell almost across the street from where the fight started; that soon after the killing he saw the cuts in Chase's hand. Another witness who reached the scene just after the shooting testified that Dave Clarke picked up a knife at the place where the shooting occurred.

■ The night marshal of Hammond reached the scene a few minutes after the shooting and Chase surrendered to this officer. The officer secured from Dave Clarke a knife which Clarke stated to the officer was found at the scene of the crime by him. Clarke could not be obtained as a witness and did not testify in the case. While the statement made by Clarke to the officer as to where he found the knife is probably inadmissible as hearsay, yet the fact that the officer did obtain a knife from Clarke is admissible to corroborate the statement of another witness who testified that he saw Clarke pick up a knife at the scene of the shooting. The coroner testified that there were two wounds or cuts on the hand of Chase after the shooting.

Three witnesses for plaintiff testified that Chase walked up to Cloud by the restaurant, caught hold of him, drew his pistol, and shot him dead out in the street. Two of these witnesses state that Chase came

up to the restaurant and told Cloud that he wanted to speak to him, and, when Cloud came up, Chase caught hold of him, drew his gun, and shot Cloud as the two men were pushing each other out into the street. These witnesses did not see any knife in the hands of Cloud.

We think the preponderance of the evidence supports the conclusion that Cloud did have a knife and cut Chase in the hand. The night marshal and the coroner testify that Chase was cut in the hand, and it follows that Cloud must have had the knife in his hands.

Cloud was a much larger man than Chase, and, as it is shown that Chase backed up almost across the street, it is evident that he was being pushed back by the larger man, Cloud, with an open knife in his hands, making an effort to cut the smaller man, Chase. Under this state of facts we think the trial court correctly held that the insured was the aggressor; that he provoked the fight, and was, at the time of his fatal injury, engaged in the commission of a felony. Certainly there is no manifest error in the finding of fact by the trial judge.

For the reasons assigned, the judgment is affirmed at the cost of the appellant.