Horace Chandler **DAVIS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.
No. 13373.

United States Court of Appeals
Sixth Circuit.

Aug. 21, 1959.

Philip Wittenberg, New York City (Philip Wittenberg, Irving Like, New York City, of counsel, Wittenberg, Carrington & Farnsworth, New York City, on the brief), for appellant.

Wendell A. Miles, Grand Rapids, Mich. (Wendell A. Miles, U. S. Atty., Grand Rapids, Mich., on the brief), for appellee.

Before MILLER, Circuit Judge, and JONES, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellant was indicted under a twenty-six count indictment for contempt of Congress in violation of Sec. 192, Title 2 U.S.Code. He was tried by the Court without a jury. The District Judge treated the twenty-six counts as charging only one offense, made a finding of guilty, and imposed a fine of $250.-00 and imprisonment for a period of six months. Judgment was stayed pending this appeal.

Appellant had been a student at Harvard College from 1942 to 1945 and had received his B. S. degree therefrom. He received the degree of Ph. D. from Harvard University in 1950. Thereafter, he had been employed as a teacher of mathematics at the University of Michigan.

Count 1 of the indictment states that a standing Committee on Un-American Activities was duly elected and certified by the House of Representatives of the 83rd Congress of the United States in accordance with the provisions of Public Law 601, 79th Congress, Chapter 753, 2nd session, known as the Legislative Reorganization Act of 1946, 60 Stat. 812; that beginning on February 23, 1953, said Committee commenced public hearings into "Communist Methods of Infiltration into Education", in accordance with provisions of Public Law 601 and the authority and power of said committee, as provided by Rule XI of House Resolution No. 5; that thereafter, on May 10, 1954, public hearings were held in Lansing, Michigan, by a duly appointed and authorized subcommittee of said Committee on Un-American Activities; that the appellant appeared before said subcommittee on May 10, 1954; that during the course of said hearing appellant was asked the following pertinent question to the inquiry:

"During the period of time that you were at Harvard as an undergraduate, say between 1942 and 1945, were you aware of the existence on the campus or in Cambridge of an organized group of the Communist Party made up chiefly of members of the student body of Harvard?"

and that the appellant deliberately and intentionally refused to answer said question claiming privilege under the First Amendment to the Constitution of the United States and persisted in such intentional refusal although directed to answer.

Each of the remaining counts incorporated the allegations of the first count with respect to the creation of the standing Committee on Un-American Activities and its subcommittee and the hearing on May 10, 1954, and in addition stated that the appellant was asked another pertinent question to the inquiry which he deliberately and intentionally refused to answer.

The questions set out in counts 1 through 11 dealt with alleged Communist activities at Harvard University and the appellant's awareness of the exist-

ence of such groups and certain named persons as having been active in such groups. The questions set out in counts 12 through 20 dealt with appellant's connection with and participation in the dissemination of a pamphlet entitled "Operation Mind" which called upon the people of Detroit to oppose the Committee's presence in the Detroit area, and which bore the notation, "Distributed by University of Michigan Council of the Arts, Sciences, and Professions, and the Civil Liberties Committee of the University of Michigan." The questions in the remaining counts dealt with certain political beliefs and associational activities of the appellant including the question whether the appellant had any time during 1952 or 1953 solicited membership in the Communist Party of any faculty member or student of the University of Michigan, whether the appellant was a member of the Communist Party and whether he had ever been a member of the Communist Party. The appellant filed a motion to dismiss the indictment, which was overruled by the District Judge, and also entered a plea of not guilty.

There is no factual dispute between the parties, and the appeal presents purely a question of law. The case was argued to this Court on April 21, 1958, but due to the pending review in the United States Supreme Court of the case of Barenblatt v. United States, 102 U.S.App.D.C. 217, 252 F.2d 129, certiorari granted 356 U.S. 929, 78 S.Ct. 771, 2 L.Ed.2d 760, which involved some of the same issues as are raised in this case, a ruling on the present appeal was held in abeyance until the Supreme Court decided Barenblatt. Its opinion in Barenblatt v. United States was handed down on June 8, 1959, and is reported at 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115.

■ Appellant first contends that the Committee was acting under an excessively broad charter, which exceeded the bounds of legislative power; that when First Amendment rights are threatened, the delegation of power to the committee must be clearly revealed in its charter;

that the authorizing resolution of the Un-American Activities Committee and Rule XI which authorized the subcommittee were so broadly drafted and loosely worded as to fail to point out with sufficient particularity the Committee's jurisdiction and purpose, thus violating the rule against vagueness. United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770; Watkins v. United States, 354 U.S. 178, 200–205, 77 S.Ct. 1173, 1 L.Ed. 2d 1273. This contention has been decided adversely to appellant's contention in Barenblatt v. United States, supra.

■ The decision in Barenblatt v. United States, supra, also disposes of appellant's contention that his conviction in this case violates the freedoms of speech and of the press guaranteed by the First Amendment.

■ In his opening statement the chairman of the subcommittee made the following statement,

"However, if any witness desires to decline to answer any question propounded, if that witness will so indicate, not through counsel, but through his own words, the fact that he does object, that will be duly noted and recorded. I must caution the witnesses, however, that the committee will recognize as an objection only the Fifth Amendment. We are repeatedly confronted by witnesses who invoke practically all the amendments and the entire Constitution itself."

Appellant contends that this assumption of an absolute power to investigate subject only to the Fifth Amendment was an unwarranted usurpation of power, in that the power to investigate is subject to the First Amendment as well as the Fifth, and that appellant's resistance thereto was accordingly lawful. Watkins v. United States, supra, 354 U.S. 178, 188, 77 S.Ct. 1173.

The statement referred to is not properly relied upon. Committee member Moulder promptly thereafter made the statement, "I want the record to show that I disagree with the chairman's posi-

tion that only the Fifth Amendment can be relied upon by a witness." The subcommittee chairman thereafter made it clear that the subcommittee was not depriving any of the witnesses of the right to raise any proper objection including all of the amendments. Appellant stood squarely upon the First Amendment. He at no time claimed the protection of the Fifth Amendment. Appellant was not prejudiced in any way by the original incorrect statement.

■ Sec. 192, Title 2 U.S.Code, makes it a criminal offense for a witness before a committee of either House of Congress in any matter under inquiry by such committee to refuse "to answer any question *pertinent* to the question under inquiry." (Emphasis added.) We agree with appellant's construction of the statute that in such a hearing part of the standard of criminality is the pertinency of the questions propounded to the witness, that the witness is entitled to be apprised of the object of the inquiry so as to show the connective tissue between the questions asked and the claimed power of the committee, and that the witness must be apprised that the committee demands his answer notwithstanding the objections made by the witness to answering the question. Watkins v. United States, supra, 354 U.S. 178, 187, 198, 208, 77 S.Ct. 1173; Quinn v. United States, 349 U.S. 155, 165–166, 75 S.Ct. 668, 99 L.Ed. 964. However, we do not agree with his contention that these standards were not complied with.

■ The acting chairman of the subcommittee in his opening remarks stated that the committee was operating under a printed set of rules which would be scrupulously observed throughout the proceedings, that each witness would be permitted to have counsel sit alongside of him at the table, that counsel would be permitted to advise the witness on his constitutional rights as the hearing progressed, and that if the witness desired, an informal recess would be called so that the witness might counsel at length with his attorney. He also made the following statement,

"Now, the last thing the committee wants to emphasize is the fact, oft repeated but many times misunderstood, and that is, we are not engaged in an investigation of any institution, educational or otherwise. We are not investigating labor unions. We are not investigating any particular group or stratum; we are concerned primarily with collecting information that will aid and assist the Congress of the United States in the enactment of legislation to cope with the Communist threat to our peace and security, and in consonance with that we shall expect each and every witness who takes the stand to observe the rules as they have been laid out and to cooperate with this committee."

During the early part of the questioning of the appellant the following statement was made by the committee counsel,

"Dr. Robert Gorham Davis testified at some length before this committee regarding the conduct of Communist Party affairs at Harvard during the period he was acquainted with it, he having been a member of the Communist Party at Harvard. The question of influence upon the faculty members upon the student body was discussed by him. He told the committee that at the time he was a member there was no direct connection between the faculty members and the student body on the subject of communism for security reasons. We are very anxious to investigate that situation fully and as at late a period as possible. We want to know from you, if you have knowledge of it, whether or not there was any relationship between the faculty members of the Communist Party and student body members of the Communist Party at Harvard and what influences were brought to bear by one group upon the other."

The evidence also clearly showed that in asking the questions of appellant the subcommittee was following up the recom-

**362**

mendations of the Committee on Un-American Activities of the House through prior years in relation to bills which had been recommended at previous Congresses for enactment, and that certain matters of legislation were under consideration at the time of the inquiry.

As a matter of fact, appellant's objection to answering the question was not based on any failure to be advised of the object of the inquiry or that the questions asked were not pertinent to the inquiry. He stated to the subcommittee, "I have taken pains to inform myself on all important political issues. I will not discuss with the committee what conclusions I reached or what methods I used to inform myself." He also said, "I believe that when you direct me to answer a question concerning my political beliefs or my political affiliations, that is entirely without force." He explained, "It seems to me that such a question infringes my freedom of speech. It infringes my freedom of speech because it seeks to oblige me to discuss my political activities and my political opinions under highly abnormal circumstances. This is not the way you discuss politics for the purpose of arriving at the truth * * *. Therefore I claim that this question is improper since it exceeds the authority of Congress. It oversteps the bounds placed on Congress by the first amendment. Therefore, I am under no compulsion to answer."

■ We are of the opinion that the appellant was fully apprised of the object of the inquiry which was within the power of the committee and that the questions asked were pertinent to the object of the inquiry. Barenblatt v. United States, supra, 102 U.S.App.D.C. 217, 252 F.2d 129, 134–136, affirmed 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115.

Appellant contends that the conviction cannot be sustained because the subcommittee failed to comply with the rule stated by the Supreme Court in Quinn v. United States, supra, 349 U.S. 155, 166, 75 S.Ct. 668, 675, as follows: " * * * unless the witness is clearly apprised that the committee demands his answer not-

withstanding his objections, there can be no conviction under § 192 for refusal to answer that question." In that case the Court was of the view that it was apparent from the transcript of the hearing that the committee's position was ambiguous, that the appellant was never confronted with a clear-cut choice between answering the question and risking prosecution for contempt, and that at best he was left to guess whether or not the committee had accepted his objection. We do not think that the proceedings in the present case are properly subject to that construction. The subcommittee made it clear to the appellant that they wanted certain information from him. Appellant left no doubt about his refusal to give the subcommittee this information. In addition to the statements hereinabove referred to, the appellant stated in answer to the question embodied in the first count of the indictment, "That is a question concerning my political associations I believe and I will refuse to answer all such questions before this committee." The appellant also stated before the second question was asked, " * * * and I will refuse to answer any questions of this nature." With respect to the questions asked in counts 10, 11, 16, 17, 19, 20, 21, 22, 24, and 25, the appellant expressly stated that he refused to answer or would not answer.

■ The subcommittee also made it clear that it was not acquiescing in appellant's refusal to answer the questions. Prior to the asking of the question embodied in the 16th count, a committee member said, "The witness is obviously in contempt of the Congress of the United States", to which the chairman replied, "There is no doubt about that. He has been in contempt all day here." As stated by the Court in Quinn v. United States, supra, 349 U.S. 155, 170, 75 S.Ct. 668, 677, "Giving a witness a fair apprisal of the committee's ruling on an objection recognizes the legitimate interests of both the witness and the committee. Just as the witness need not use any particular form of words to present his objection, so also the committee

is not required to resort to any fixed verbal formula to indicate its disposition of the objection. So long as the witness is not forced to guess the committee's ruling, he has no cause to complain." Appellant's positive, unqualified statements clearly indicated his position and his refusal to answer, regardless of the subcommittee's ruling.

■ In any event, it appears that there were express directions to answer the questions forming counts 1, 13, 15, 18, 22, and 24. Since a conviction under any one of the twenty-six counts would sustain the judgment imposed in this case, the failure, if any, to expressly direct the appellant to answer the question forming the basis of another count, does not invalidate the judgment. Hirabayashi v. United States, 320 U.S. 81, 105, 63 S.Ct. 1375, 87 L.Ed. 1774; Poliafico v. United States, 6 Cir., 237 F.2d 97, 112; Kelleher v. United States, 59 App. D.C. 107, 35 F.2d 877, 879.

■ Although we concur in the view that each count of the indictment constituted a separate offense, United States v. Orman, 3 Cir., 207 F.2d 148, 160; Newman v. United States, 6 Cir., 212 F.2d 450, 452, we find no merit in appellant's contention that the District Judge erred in treating the twenty-six counts of the indictment as constituting a single offense and in imposing only one judgment. It is ordinarily desirable that a separate sentence be imposed under each count of an indictment on which a conviction is had, but a single or general sentence on two or more offenses charged in the same indictment, without apportioning the sentence to the respective counts in the indictment, is not illegal, provided the sentence imposed is not in excess of the maximum allowed by law for all the offenses of which the defendant is guilty. Jackson v. United States, 6 Cir., 234 F.2d 605; Hamilton v. United States, 4 Cir., 204 F.2d 927, 928, certiorari denied 346 U.S. 858, 74 S.Ct. 74, 98 L.Ed. 372; Levine v. Hudspeth, 10 Cir., 127 F.2d 982, 984, certiorari denied, 317 U.S. 628, 63 S.Ct. 39, 87 L.Ed. 507; Phillips v. United States, 8 Cir., 212 F.

2d 327, 335; McKee v. Johnston, 9 Cir., 109 F.2d 273, 275. The single sentence imposed in the present case was not in excess of the maximum allowed for any one count.

The judgment is affirmed.

This case was argued to a panel of the court consisting of MILLER and STEWART, Circuit Judges, and JONES, District Judge. Judge STEWART became an Associate Justice of the Supreme Court of the United States before a decision was reached or this opinion was prepared. He therefore did not participate in the decision, opinion, or judgment in this case.