Dorothy Milam JERNIGAN, Appellant,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

No. 17582.

United States Court of Appeals
Fifth Circuit.

Nov. 24, 1959.

Rives, Chief Judge, dissented.

858

Louis B. Graham, New Orleans, La., for appellant.

F. Carter Johnson, Jr., New Orleans, La., for appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

The forceful petition for rehearing makes it desirable that the principles upon which the decision is based be brought into sharper focus. Basically this liability policy covered *accidents*, indemnifying each and all of those insured (whether named or "omnibus") against payment of any damages caused by any and all *accidents* arising from use of the insured automobile. Specifically, therefore, the court below and we were called upon to decide whether that term embraced a deliberate assault not provoked by the assaultee.

The answer to that question was yes. The law had written into the policy a provision of this import:

The word "accident" as herein used shall be construed from the standpoint of the person injured and shall include unprovoked assaults.

That provision of the policy "is as effectually one of its terms—as if it had been plainly expressed."[1] We recently stated:[2] "Of course, the existing law, including judicial precedents, must be read into all contracts * * *"

Assuming, without deciding, that the parties could agree to excise that clause from an insurance contract, it is clear that such an amendment would have to be accomplished by explicit and direct words. It cannot be accomplished by the indirect and equivocal language of the clause upon which the insurance company relies.[3] The portion of it which essays to include assault and battery within the term accident is surplusage, because the policy already contained a legally implied provision which defined accident as including assault and battery. The unclear and ambiguous language with which Condition 7 closes ("unless committed by or at the direction of the insured") is, as the insurer would have us construe it, in the nature of a "negative pregnant"—i. e., negative in form but carrying affirmative implications. To have the effect with which the insurer seeks to invest it this provision would have been required to be in some such language as this: "An assault shall not be considered an accident if it is committed by or at the instance of any of the persons named or included within the word insured as used in this policy."

We think that this Court attributed to the clause "unless committed by or at the direction of the insured" the only logical meaning of which it is susceptible when we said:[4] "The reasonable construction of that clause, it seems to us, is that it was inserted out of deference to the question of public policy involved in insurance indemnifying against an insured's

1. Judge (soon thereafter Mr. Justice) Van Devanter in Brewster v. Lanyon Zinc Co., 8 Cir., 1905, 140 F. 801, 812, citing six decisions of the Supreme Court of the United States.

2. St. Paul-Mercury Indemnity Co. v. Rutland, 5 Cir., 1955, 225 F.2d 689, 692. And see also 20 Am.Jur., p. 236.

3. The policy involved in the landmark case of Georgia Casualty Co. v. Alden Mills, 1930, 156 Miss. 853, 127 So. 555, 73 A.L.R. 408,—it being the standard form of policy then in use—contained no such clause.

4. In Western Casualty & Surety Co. v. Aponaug Mfg. Co., 5 Cir., 1952, 197 F.2d 673, 674.

willful act." The Court of Appeals of Louisiana[5] thought that this limitation referred "only to the *named insured*" and that ony other holding would be "to render this clause completely ineffective * * * "[6] It is not unreasonable to conclude that Reites, the person who purchased the insurance protection, should, by the terms of the policy, be barred from claiming indemnity against any deliberate assault he might commit. Otherwise, a person planning mischief against another could purchase advance protection against being forced to pay for his deliberate act.

But it is irrational to deny the protection given by the explicit terms of the policy to Reites' spouse and to others using the car with their permission, provided, of course, they did not commit the assault "at the direction of the insured." Under the construction advocated by the insurer and espoused in the dissenting opinion the policy would cover no assaults except those committed by the employees of Reites. Such a limitation would, in our opinion, have no reasonable foundation and some courts have ruled even employees out of coverage where such a clause appears in the policy.[7]

The question of employee coverage is not involved in the case before us, and we mention this feature merely to illustrate that the law-implied definition of accident as including unprovoked assault would be stripped of practically all of its efficacy under the theory of the dissenting opinion. The location of the assault clause in the policy before us tends to negative the implications with which appellee seeks to invest it. A policy provision having enough potency to set aside a paragraph inserted in it by legal implication would logically occupy a prominent place among the *Exclusions* of the policy. This policy has three grand divisions, each appearing as a heading set in large heavy type in the middle of the page— Insuring Agreements, Exclusions, and Conditions. Under the line, Exclusions, appears, in heavy type, "THIS POLICY DOES NOT APPLY:" followed by seventeen separate paragraphs defining areas of possible liability specifically excluded from the coverage of the policy. It would be assumed that all exclusions would be embraced in the policy division bearing that heading.

The clause in question appears as a "Condition," of which there are twenty-three covering in general the details of the relationship between insurer and insured and embracing such items as notice of accident, claim or suit, actions against the insurer, cooperation of the insured, assignment, cancellation, and the like.

While it is clear that this holding is in line with what the court did in Western Casualty & Surety Co. v. Aponaug, supra, it is not dependent upon it. In view of the extended discussion of that case in the dissenting opinion, we think it worth while to point out the facts with which we were there dealing upon which the words we used were dependent. Sinclair Oil & Gas Co. v. Masterson, 5 Cir., 1959, 271 F.2d 310. The policy involved there was a "Manufacturers and Contractors Liability Policy" covering the textile operations of five corporations named insured. Most of the important provisions are substantially identical with those of the policy before us, the assault "condition" being in the same words. The "omnibus" clause extended the coverage so as to cover "not only the named Insured, but also any partner, executive officer, director or stockholder

5. Barringer v. Employer's Mutual Liability Insurance Co., La.App.1952, 62 So.2d 173, 177.

6. Even assuming that this statement was not necessary to a decision of the case, it is not robbed of the logic and reason which inheres in it.

7. Under § 4 of the annotation in 33 A.L.R. 2d at pages 1036–1037, the courts aligned on both sides of the question of coverage of the employees of the assured are discussed. Our decision in Western Casualty & Surety Co. v. Aponaug Mfg. Co., supra, is classified as among the decisions protecting the named insured from the assaults of its agents. Other cases are listed which reject such coverage.

thereof, while acting within the scope of his duties as such." One Morrison sued said corporations and Sanders, president and treasurer of each of them, for an assault alleged to have been committed by him "while he was acting in direct line with his duties as agent and officer of said corporations" in discussing the Workmen's Compensation Act, "a subject matter concerning which said corporate defendants were vitally interested." Western Casualty declined, after due notice, to defend the action, and it was settled and suit was brought by Aponaug to recover the amount paid in settlement, together with expenses and attorneys' fees. Aponaug moved for summary judgment based upon certain affidavits and upon the deposition of Sanders. These revealed that Sanders owned a majority of stock of all of the corporations and the affidavit of Morrison stated that Sanders was president, secretary and a director of each of the corporations, and that "as an executive officer of the Aponaug Manufacturing Company, Inc., as a stockholder of said corporation, as a director of said corporation, and as president and secretary and treasurer of said corporation, the said R. D. Sanders met affiant and in connection with his efforts as such officer, director, president and secretary and treasurer of the corporations above named, willfully, viciously, and without cause, assaulted and battered affiant * * * "

This Court affirmed the action of the court below in granting summary judgment in favor of Aponaug and against Western notwithstanding this evidence that Sanders was an insured under the "omnibus" clause.

We adhere to the opinion and judgment heretofore entered and the petition for rehearing is

Denied.

JONES, Circuit Judge (specially concurring).

As is shown by their opinions on the petition for rehearing in this case, the judge who, as counsel, was successful in the Aponaug case [1] and the judge who wrote the opinion are not in agreement as to its meaning. Whatever that case may hold, it should be remembered that it was a diversity case arising in Mississippi and the decision was intended as a statement of the law of that State. We are here considering a case arising in Louisiana and calling for an application of Louisiana law. The original opinion here and the opinion on rehearing of Judge Cameron mention the Louisiana case of Barringer v. Employer's Mutual Liability Insurance Co., La.App., 62 So. 2d 173, which was decided in the same year as Aponaug. The dissenting opinion of Judge Rives refers to the applicable language in Barringer as dictum which should not cause a departure from Aponaug. In the Barringer case it was said:

"We find it unnecessary to discuss the other defenses raised by the insurer, other than to say that we are in accord with our brother below in his reasoning that the policy of insurance in the instant case covered and affected any assault and battery committed by an employee of the insured acting within the scope of his authority. Defendant contends that though the policy expressly provides 'assault and battery shall be deemed an accident unless committed by or at the direction of the insured' the definition of 'insured' contained in the policy includes the operator of the vehicle, namely an employee, such as Sims in this instance, with the result the operator as well as the insured comes within the exclusion. We reason as did the judge a quo that the clause is in the nature of an omnibus clause, however, we think that the limitation 'unless committed by or at the direction of the insured' refers only to the named insured. To otherwise hold would

1. Western Casualty & Surety Co. v. Aponaug Mfg. Co., 5 Cir., 1952, 197 F.2d 673.

be to render this clause completely ineffective, an end surely not intended by the parties thereto." Barringer v. Employer's Mutual Liability Insurance Co., 62 So.2d 173, 177.

If the foregoing be dictum, I think it may be said of it, as the Supreme Court has said,

"At least it is a considered dictum, and not comment merely obiter. It has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement. * * * In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions. Disagreement with either, even though permissible, is at best a last resort, to be embraced with caution and reluctance. The stranger from afar, unacquainted with the local ways, permits himself to be guided by the best evidence available, the directions or the counsel of those who dwell upon the spot." Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 242, 77 L.Ed. 610. See Polk County, Georgia v. Lincoln National Life Ins. Co., 5 Cir., 1959, 262 F.2d 486.

I think the rule announced in Barringer is applicable to the factual situation before us and the rule there stated is binding upon us. Therefore, I concur in the denial of the petition for rehearing.

RIVES, Chief Judge (dissenting).

The appellant has pressed, both in the district court and here, two propositions:

"1. Paragraph 7 of the policy states, 'Assault and Battery shall be deemed an accident unless committed by or at the direction of the Insured.' William B. Reites was the named insured; Beatrice Adams, his aunt, was the defined insured. The word 'Insured' in the above clause means the *named insured*. And in the alternative:

"2. Due to the insanity of the driver, Beatrice Adams, at the time of the tragedy she was incapable of committing a deliberate and willful act and that, therefore, the death of Mack Franklin Jernigan was caused by an accident under the terms of the policy." Appellant's Brief, filed Feb. 2, 1959, pp. 2–3.

Upon original hearing, this Court decided proposition 1 with the appellant, and did not pass upon the alternative proposition. The ground upon which our decision is based is important because a decision based upon proposition 1 would serve as a precedent in common law states in construing the quoted standard provision of an automobile liability insurance policy, while a decision based upon proposition 2 might rest upon the civil law rule peculiar to the State of Louisiana. I am convinced that we erred in deciding proposition 1 with the appellant.

Referring to Western Casualty & Surety Co. v. Aponaug Mfg. Co., 5 Cir., 1952, 197 F.2d 673, our original opinion stated [269 F.2d 357]:

" * * * Our holding there that excluding the insured from those whose assaults would be protected referred only to the named insured and was based upon the idea that some courts hold that it is against public policy for a person to obtain insurance which provides indemnity against his own willful act."

That statement of the holding in Aponaug is, I submit, clearly erroneous. Earlier in our original opinion, there is a long quotation from the opinion in the Aponaug case, concluding with the sentence [197 F.2d 674]:

" 'The reasonable construction of that clause, it seems to us, is that it was inserted out of deference to the question of public policy involved in insurance indemnifying against an insured's willful act.' "

Western Casualty & Surety Co. v. Aponaug Mfg. Co., supra, 197 F.2d at page 674.

The error in our statement of the holding in Aponaug becomes apparent when the quotation is extended to include the next two sentences:

"The word 'the' qualifies the word 'insured' and means, we think, that when the coverage of the policy as to a particular insured is at issue and that insured either committed or directed the assault and battery, then, as to such insured the assault and battery shall not be deemed an accident. The clause is without effect as to other persons insured who neither committed nor directed the commission of the assault and battery." 197 F.2d at page 674.

Many cases [1] hold that it is contrary to public policy to insure a person against financial responsibility for his own willful wrong or criminal misconduct. The encouragement of wrongdoing is no less, or if less, then only by an immaterial shade, in cases where the insurance is procured by a person other than the willful wrongdoer but in which he becomes an insured under the "omnibus clause." Certainly, an insurance company may properly draft its policy so as to exclude coverage in either instance. The ratio decidendi of Aponaug is, I submit, sound. The dictum to the contrary, appearing toward the end of the opinion, apparently as an afterthought, in Barringer v. Employer's Mutual Liability Ins. Co., La. App., 1952, 62 So.2d 173, 177, should not cause us to depart from the reasoning in Aponaug.

The standard liability policy is carefully drafted to refer to "the named insured" in the many instances where the meaning is so restricted. It is not so restricted in the "omnibus clause":

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

Liability of the insurer in this case is based upon the "omnibus clause." William B. Reites was the named insured. The district court found:

"William B. Reites did, on May 1, 1956, grant to Beatrice Adams, a registered operator, permission to use said 1952 Chevrolet automobile * * *. That William B. Reites had no knowledge that Beatrice Adams had any mental infirmities or difficulty, or had received medical treatment therefor."

Our original opinion and decision fastens no liability upon the appellee insurance company because of any negligence or fault on the part of the named insured, but solely because of the fault of Beatrice Adams who was using the automobile with the permission of the named insured and was therefore included as an insured under the omnibus clause.

The policy contains a particular provision providing when assault and battery shall be deemed an accident.[2] In assault and battery cases, that provision controls over any general concept of the meaning of "accident."[3] When there is at issue only the coverage of the policy as to Beatrice Adams, an insured under the

---

1. See, for example, the cases cited in Farm Bureau Mutual Automobile Insurance Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793, 795, and in Haser v. Maryland Casualty Co., 78 N.D. 893, 53 N.W.2d 508, 33 A.L.R.2d 1018.

2. "Assault and Battery shall be deemed an accident unless committed by or at the direction of the insured."

3. Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793, 796; Anton v. Fidelity & Casualty Co. of New York, 1952, 117 Vt. 300, 91 A. 2d 697, 700.

omnibus clause, it is error for us to hold that an assault and battery committed by that insured shall be deemed an accident.

Whether or not the majority is right as to proposition 1, it seems to me that we should not avoid consideration and decision of the principles upon which proposition 2 is based, for, in my opinion, under the Louisiana law, Beatrice Adams' insanity itself was a complete and independent defense.

I would agree that, under the civil law prevailing in Louisiana, Beatrice Adams, being insane, did not, in a legal sense, commit assault and battery. In Louisiana, as elsewhere, an intention to do harm is of the essence of an assault and battery.[4]

At common law, an insane person is liable in a tort action for assault and battery.[5] Louisiana, however, follows the civil law in basing tort liability on fault. Article 2315 of the LSA–Civil Code provides that, "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it  *  *  *." In Yancey v. Maestri, La.App.1934, 155 So. 509, 515, after most careful consideration, it was held that this statute, interpreted in the light of its historical origin and background, is limited by the civil law rule that an insane person is not liable for his torts.[6]

Thus, I agree with the first part of appellant's alternative proposition 2.[7] The conclusion in the second part,[8] however, seems to me a complete *non sequitur*. In Louisiana, insanity such as exists in this case[9] is more than a mere personal defense to tort liability—there is an utter lack of legal basis to hold an insane person liable for his torts. The policy involved obligated the insurance company to pay all sums which the insured shall become legally obligated to pay as damages, etc. Since the insane insured did not become liable to pay damages, it necessarily follows that there was no liability on the part of the insurance company. I now think that the judgment so holding should be affirmed, and therefore respectfully dissent.

4. Osborne v. People's Benev. Industrial Life Ins. Co., 1932, 19 La.App. 667, 139 So. 733, 735.

5. 4 A.L.I., Restatement of Torts, Sec. 887, Comment a, p. 468; Prosser on Torts, 2d ed., Sec. 109, p. 791; 6 C.J.S. Assault and Battery § 25(b) (2), p. 829.

6. Another Louisiana statute, Article 2319 of the LSA–Civil Code, provides: "The curators of insane persons are answerable for the damage occasioned by those under their care." That article is discussed in Yancey v. Maestri, supra, 155 So. at page 517:
"*  *  * Our view is that the purpose of the article is to make the curator individually and personally answerable for the damage occasioned by the insane person in his charge and not in his capacity as representative of the estate of the insane person. Whether or not the article means that the curator is liable in damages for the acts of the interdicted person only where the curator was guilty of negligence and carelessness in not properly restraining and guarding his charge, or whether he is liable in any event under the theory that he, at his peril, must prevent the insane person from wrongfully causing damage to another, is a question which we need not decide at this time."
It has been suggested that *fault* must be charged to the curator because of the lack of culpability of the insane person. See "Tort Doctrine of Louisiana," F. F. Stone, 17 Tulane Law Review 159, at 192. In any event, a curator's liability is not involved in this case, and Article 2319 does not detract from the well-established civil law rule that an insane person is not liable for this torts. Yancey v. Maestri, supra.

7. "Due to the insanity of the driver, Beatrice Adams, at the time of the tragedy she was incapable of committing a deliberate and willful act.  *  *  *"

8. "*  *  * and that, therefore, the death of Mack Franklin Jernigan was caused by an accident under the terms of the policy."

9. That is that the insured Beatrice Adams "was legally insane under the McNaughton formula, particularly that part which states, 'that he did not know what he was doing was wrong.'"