Arthur McPHAUL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13285.

United States Court of Appeals
Sixth Circuit.

Dec. 5, 1959.

Ernest Goodman, Goodman, Crockett, Eden & Robb, Detroit, Mich., for appellant.

George E. Woods, Chief Asst. U. S. Atty., Detroit, Mich., Fred W. Kaess, U. S. Atty., Detroit, Mich., on brief, for appellee.

Harold Norris, Detroit, Mich., on brief amicus curiæ of Metropolitan Detroit Branch, American Civil Liberties Union.

Before MILLER, CECIL and WEICK, Circuit Judges.

WEICK, Circuit Judge.

Appellant was served with a subpoena duces tecum requiring him to produce certain records of the Civil Rights Congress before the Committee on Un-American Activities of the United States House of Representatives on February 27, 1952, at Detroit Michigan.

The subpoena called for:

"documents of the Civil Rights Congress relating to, (A) all records, correspondence, and memoranda pertaining to the organization of, and (B) the affiliation with other organizations, and (C) all moneys received or expended by the Civil Rights Congress."

Appellant appeared before the Subcommittee, accompanied by one of his counsel of record here, and distributed to the Subcommittee members copies of a prepared statement and a petition. He did not, however, produce the subpoenaed records.

Appellant was sworn as a witness and after giving his name and where he was born, admitted that he had been served with the subpoena. After some sparring with Subcommittee counsel during which he invoked the Fifth Amendment to the Constitution, he testified:

"Q. Mr. Tavenner: (The Committee Counsel) No Sir. You have stated that you refuse to answer any questions pertaining to them [the records]. I have not asked you a question that pertains to them. I have asked you to produce the records. Now, will you produce them? A. Mr. McPhaul: I will not" (App. 45a.)

Upon his refusal to produce the records, he was indicted for violation of Title 2 U.S.C.A. § 192.[1] He was tried by a jury, convicted and sentenced to nine months imprisonment and fined $500. He appeals from the judgment of conviction.

In the District Court, appellant moved to dismiss the indictment and for a directed verdict of acquittal. Both of these motions were carefully considered by the District Judge, in oral opinions, in which he analyzed the issues and discussed the authorities. He denied the motions.

At the time of the trial in the District Court, the case of Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (Decided June 17, 1957) had not been decided. The Watkins case was heavily relied upon by appellant in his brief filed in this Court on January 13, 1958 in support of his contentions

(a) that the resolution creating the House Un-American Activities Committee was so vague as to constitute a denial of due process,

(b) that the resolution violated the First Amendment of the Constitution of the United States, and

---

1. 2 U.S.C.A. § 192*, provides:

"Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months."

(c) that the evidence was insufficient to prove that the subpoenaed records were pertinent to any lawful objective of the Committee's inquiry.

■ The latest pronouncement of the Supreme Court in Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 1087, 3 L.Ed.2d 1115 (Decided June 8, 1959) indicates that appellant's reliance on Watkins was misplaced. See also Davis v. United States, 6 Cir., 1959, 269 F.2d 357.

In considering whether the enabling resolution was unconstitutionally vague, the Court said:

"The Watkins case cannot properly be read as standing for such a proposition."

The Court further said:

"In this framework of the Committee's history we must conclude that its legislative authority to conduct the inquiry presently under consideration is unassailable, and that independently of whatever bearing the broad scope of Rule XI may have on the issue of 'pertinency' in a given investigation into Communist activities, as in Watkins, the Rule cannot be said to be constitutionally infirm on the score of vagueness."

The holding in Barenblatt controls the contention that the resolution violated the First Amendment to the Constitution, id., 360 U.S. at page 134, 79 S.Ct. at page 1097.

■ In regard to the issue of pertinency, appellant raised no objection on this ground before the Subcommittee. This factor distinguishes the instant case from Watkins.

Mr. Justice Harlan, in Barenblatt, pointed out this distinction. He said:

"In Watkins the petitioner had made specific objection to the Subcommittee's questions on the ground of pertinency; the question under inquiry had not been disclosed in any illuminating manner; and the questions asked the petitioner were not only amorphous on their face, but in some instances clearly foreign to the alleged subject matter of the investigation—'Communism in labor.' Id., 354 U.S. at pages 185, 209–215, 77 S.Ct. at pages 1178, 1190–1194.

"In contrast, petitioner in the case before us raised no objections on the ground of pertinency at the time any of the questions were put to him." 360 U.S. at page 123, 79 S.Ct. at page 1091.

When the Subcommittee opened the hearings in Detroit, its Chairman made an announcement of the purpose and object thereof in which he said, among other things:

"The purpose of this investigation is to determine first, whether there has been Communist activity in this vital defense area (Detroit), and if so, the nature, extent, character and objects thereof" (App. 32a.)

The evidence disclosed that the Subcommittee had information to the effect that the Civil Rights Congress had been declared a subversive organization by the Attorney General of the United States and that appellant was executive secretary thereof.

A previous witness before the Subcommittee, Richard F. O'Hair, had testified that appellant was a member of the Midtown Club of the Communist Party.

Appellant had been fully advised by the Chairman of the Subcommittee as to the nature and purpose of the investigation, namely, as to Communist activity in the Detroit area and the nature, extent, character and objects thereof. He was present with his counsel and had a prepared statement and a petition to file with the Subcommittee.

The Subcommittee, and not appellant, had the right to pass upon the pertinency of the subpoenaed records. Cf. Barenblatt v. United States, supra, 360 U.S. at page 124, 79 S.Ct. at page 1091. It could not do so because appellant had refused to produce them for its examination.

The pertinency claim is, therefore, without merit.

■ It is next contended that the trial judge erred in failing to direct a verdict of acquittal because the evidence failed to show that the subpoenaed records were in the possession or control of appellant.

The trouble with this contention is that, like the pertinency claim, it was never raised by appellant before the Subcommittee.

If he did not have possession or control of the records, proper respect for the authority of the Subcommittee would require him to so state. The Subcommittee would then have had the opportunity to investigate and prove otherwise if such were the truth. Appellant gave the Subcommittee no chance to consider the matter. In flagrant disregard of the Subcommittee's authority, appellant's answer to the question whether or not he would produce the subpoenaed records was "I will not."

Having taken the position before the Subcommittee that he would not produce the records, he cannot now claim that the Government was required to show that they were in his possession or control.

If appellant had any legitimate excuse for not complying with the subpoena, he should have made it known to the Subcommittee on the return day. Having failed to do so, he cannot urge it for the first time as a defense to the charge in the indictment. Cf. United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed 884; United States v. Fleischman, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906; Morrison v. People of State of California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664.

■ Finally, it is contended that the subpoena was so broad and all inclusive as to constitute an unreasonable search and seizure in violation of the Fourth Amendment to the Constitution.

The District Judge answered this contention quite effectively when he said:

"There is nothing here to show the relationship of the defendant to these records or documents, and if they are the property of the Civil Rights Congress, that body and not the defendant has the right to exercise the privilege. And if we assume that the defendant is the owner of the records, or is an officer of the Civil Rights Congress, or one of the members of the Civil Rights Congress, so as to constitute him a so-called owner of the records, the request for the production of such records would not offend the Fourth Amendment if they contained matters that were within the scope of the inquiry, and that could not be determined until the matter was properly presented to the Court."

In our judgment, this was a correct statement of the law.

The judgment of conviction is affirmed.